[No. A123784. First Dist., Div. Five. Feb. 11, 2010.]

MARGARET A. SELTZER, Plaintiff and Respondent, v.
MICHAEL A. BARNES, Defendant and Appellant.

956

## COUNSEL

Sonnenschein Nath & Rosenthal, Sonia Martin and Megan Dunham for Defendant and Appellant.

Seltzer Law Group and Margaret A. Seltzer for Plaintiff and Respondent.

## OPINION

**SIMONS, Acting P. J.**—Defendant Michael A. Barnes (appellant) appeals an order denying his special motion to strike the complaint filed by plaintiff Margaret A. Seltzer (respondent) pursuant to the anti-SLAPP[1] statute (Code Civ. Proc., § 425.16).[2] Appellant contends the trial court erred in concluding respondent's two causes of action against him do not arise from speech or petitioning activity, where his alleged conduct was the negotiation of a settlement agreement in a prior case. We agree. Moreover, because appellant may not be held liable for the alleged conduct under the litigation privilege (Civ. Code, § 47, subd. (b)), respondent has failed to demonstrate a probability of prevailing on her causes of action for fraud and intentional infliction of emotional distress. We reverse the trial court's order and remand with directions to the trial court to grant appellant's section 425.16 motion to strike.

### FACTUAL AND PROCEDURAL BACKGROUND

Respondent, an attorney, owns a condominium unit located in a Marin City condominium development known as "The Headlands View Homes." The development is managed by The Headlands Homeowners Association (Association), and a management company hired by the Association, the Eugene Burger Management Corporation Association (Burger).

In March 2003, respondent commenced an action entitled *Seltzer v. Eugene Burger Management Corp.* (Super. Ct. Marin County, 2005, No. CV030970), against the Association and Burger (the Burger Action). The action, among other things, sought to enjoin a range of alleged unlawful conduct on the part of the development's management. The Association filed a cross-complaint alleging claims based on respondent's damaging and destroying trees without the Association's permission (the trespass claims) and claims arising from respondent's failure to pay assessments (the assessment claims).[3]

Respondent tendered the cross-complaint to the provider of her homeowner insurance policies, Allstate Insurance Company (Allstate). Allstate retained appellant's law firm to provide advice concerning coverage for the cross-complaint under respondent's insurance policies. Through appellant, Allstate

---

[1] SLAPP is an acronym for "strategic lawsuit against public participation." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 57, fn. 1 [124 Cal.Rptr.2d 507, 52 P.3d 685] (*Equilon*).)

[2] All undesignated section references are to the Code of Civil Procedure.

[3] In June 2006, Division Three of this court affirmed the denial of respondent's section 425.16 motion to strike the cross-complaint and her motion to disqualify counsel. (*Seltzer v. Eugene Burger Management Corp.* (June 30, 2006, A109653) [nonpub. opn.].)

informed respondent it would defend her against the cross-complaint, subject to a reservation of rights to deny coverage. Allstate took the position that the assessment claims in the cross-complaint are not covered under respondent's policies. Allstate retained Richard Reynolds and his law firm Bennett, Samuelson, Reynolds, and Allard (Reynolds) as respondent's defense counsel.

Appellant negotiated a settlement of the trespass claims with Paul W. Windust (Windust), counsel for the Association. Allstate agreed to pay the Association $37,500 and the Association agreed to dismiss its fourth and fifth causes of action against respondent and any other claims for "bodily injury," "personal injury," or "property damage." The settlement did not encompass the assessment claims. Allstate and the Association signed a "Settlement and Release Agreement" and, on September 24, 2007, the Association filed a request for dismissal in accordance with the agreement; the dismissal was entered that same day.

In February 2008, respondent filed the instant complaint (Complaint) against the Association, Burger, Allstate, appellant, and Windust. The Complaint alleges that Allstate and the other defendants colluded to defraud respondent, defeat her coverage under her insurance policies, and convert the proceeds of her insurance policies to the Association. In particular, following secret negotiations, Allstate and the Association entered into an agreement in September 2007 to dismiss the claims that Allstate considered covered under respondent's insurance policies, in order to justify Allstate's denial of a defense on the remainder of the cross-complaint and to provide the Association with funds to continue its litigation against respondent.[4]

Respondent alleged causes of action against appellant for fraud and intentional infliction of emotional distress, principally based on his participation in the negotiations that resulted in the partial settlement in the Burger Action. Among other things, the Complaint alleged that appellant "collude[ed]," "secretly communicat[ed]," and "secretly negotiat[ed]" with Windust; "offer[ed] to pay to dismiss the suit to avoid the cost of defending it"; and "offer[ed] money to reconfigure the pleadings so as to attempt to eliminate coverage."

Appellant filed a demurrer and, pursuant to section 425.16, a special motion to strike the claims against him. A declaration from appellant, with

---

[4] Respondent also sued the Association and Burger for, among other things, diverting assessment trust funds for unlawful purposes instead of for the maintenance of the development's commonly owned property. In June 2009, this court affirmed the denial of the Association's and Burger's motions to compel arbitration of causes of action against them for breach of fiduciary duty, financial fraud by fiduciaries, unfair business practices, and intentional infliction of emotional distress. (*Seltzer v. The Headlands Homeowners Assn.* (June 25, 2009, A122179) [nonpub. opn.].)

attachments, detailed the negotiations resulting in the partial settlement of the cross-complaint in the Burger Action. Specifically, in May 2007, pursuant to section 998, the Association offered to settle the cross-complaint in its entirety in exchange for $47,500 and a commitment by respondent to execute a " 'Hold Harmless Agreement and Waiver of Responsibility for Maintenance by Community Association.' " Allstate, through appellant, counteroffered to pay the Association $30,000 in exchange for dismissal of the cross-complaint. Over the next month, appellant and Windust exchanged several settlement demands and offers on behalf of Allstate and the Association.

In July 2007, the Association accepted Allstate's offer to settle the entire cross-complaint against respondent for $37,500. After appellant notified Reynolds of Allstate's intent to settle, respondent objected to the settlement because it would have, among other things, prevented her from seeking her own attorney's fees and costs from the Association.

In August 2007, appellant informed Windust that Allstate could not agree to any settlement that would waive respondent's right to seek her attorney's fees and costs from the Association. The Association offered to settle only the covered claims in the cross-complaint, preserving respondent's right to pursue her attorney's fees and costs from the Association on the remaining claims. Appellant sent respondent a letter summarizing the ongoing settlement discussions. The letter asked for respondent's preference among three options: (1) settlement of the entire cross-complaint, (2) settlement of the trespass claims alone, or (3) withdrawal of respondent's insurance claim. In response, respondent impliedly rejected all three options and effectively insisted that the matter continue to be litigated at Allstate's expense. In September 2007, Allstate and the Association entered into the partial settlement agreement described above, which preserved respondent's right to seek attorney's fees and costs from the Association on the remaining claims.

In December 2008, the trial court denied appellant's motion to strike.[5] This appeal followed.

## DISCUSSION

### I. *Summary of Section 425.16*

■ "In 1992, the Legislature enacted section 425.16 in an effort to curtail lawsuits brought primarily 'to chill the valid exercise of . . . freedom of

---

[5] The trial court sustained appellant's demurrer with leave to amend. The trial court denied a section 425.16 motion to strike filed by Allstate and granted a section 425.16 motion to strike filed by Windust. In early 2009, respondent filed her notice of appeal from the grant of Windust's motion. (*Seltzer v. Windust* (A124078).) That appeal is presently pending.

speech and petition for redress of grievances' and 'to encourage continued participation in matters of public significance.' (§ 425.16, subd. (a).) The section authorizes a special motion to strike '[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States [Constitution] or [the] California Constitution in connection with a public issue . . . .' (§ 425.16, subd. (b)(1).) The goal is to eliminate meritless or retaliatory litigation at an early stage of the proceedings. [Citations.] The statute directs the trial court to grant the special motion to strike 'unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.' (§ 425.16, subd. (b)(1).)" (*Gallimore v. State Farm Fire & Casualty Ins. Co.* (2002) 102 Cal.App.4th 1388, 1395–1396 [126 Cal.Rptr.2d 560], fn. omitted (*Gallimore*).)

■ "The statutory language establishes a two-part test. First, it must be determined whether the plaintiff's cause of action arose from acts by the defendant in furtherance of the defendant's right of petition or free speech in connection with a public issue. [Citation.] 'A defendant meets this burden by demonstrating that the *act underlying* the plaintiff's cause fits one of the categories spelled out in section 425.16, subdivision (e).' [Citation.] Assuming this threshold condition is satisfied, it must then be determined that the plaintiff has established a reasonable probability of success on his or her claims at trial." (*Gallimore, supra*, 102 Cal.App.4th at p. 1396.) "Whether section 425.16 applies and whether the plaintiff has shown a probability of prevailing are both legal questions which we review independently on appeal. [Citations.]" (*Ibid.*) ■ The statute provides that section 425.16 "shall be construed broadly." (§ 425.16, subd. (a).)

II. *"Arising From"*

■ "A defendant who files a special motion to strike bears the initial burden of demonstrating that the challenged cause of action arises from protected activity. [Citations.]" (*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658, 669 [35 Cal.Rptr.3d 31] (*Peregrine Funding*).) In *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78 [124 Cal.Rptr.2d 519, 52 P.3d 695] (*Cotati*), the California Supreme Court explained: "[T]he statutory phrase 'cause of action . . . arising from' means simply that the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech. [Citation.] In the anti-SLAPP context, the critical point is whether the plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's right of petition or free speech. [Citations.] 'A defendant meets this burden by demonstrating that the act underlying the plaintiff's cause fits one of the categories spelled out in section 425.16, subdivision (e) . . . .'

[Citations.]" ■ Under section 425.16, subdivision (e), an act in further-ance of a person's right of petition or free speech includes: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." "In deciding whether the 'arising from' requirement is met, a court considers 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.' (§ 425.16, subd. (b).)" (*Cotati*, at p. 79.)

■ Appellant contends this case falls under section 425.16, subdivision (e)(2), which includes statements made in connection with civil court litigation. (*Healy v. Tuscany Hills Landscape & Recreation Corp.* (2006) 137 Cal.App.4th 1, 4–5 [39 Cal.Rptr.3d 547].) Cases construing the subdivision hold that "a statement is 'in connection with' litigation under section 425.16, subdivision (e)(2), if it relates to the substantive issues in the litigation and is directed to persons having some interest in the litigation." (*Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1266 [73 Cal.Rptr.3d 383], fn. omitted; see also *Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 908 [120 Cal.Rptr.2d 576] [courts have adopted "a fairly expansive view of what constitutes litigation-related activities within the scope of section 425.16"].)

Respondent's causes of action for fraud and intentional infliction of emotional distress are based on allegations that appellant, on behalf of Allstate, secretly[6] negotiated an agreement with the Association that resulted in dismissal of the trespass claims from the Association's cross-complaint against respondent. Respondent contends she was injured by the agreement because it resulted in Allstate's refusal to pay defense expenses on the remainder of the cross-complaint, which Allstate asserted no longer involved a covered claim. The Complaint and respondent's brief on appeal refer to other conduct by appellant, including communications with respondent regarding her insurance policy and supervision of Reynolds's representation of respondent, but respondent does not contend her causes of action against appellant are based on such alleged conduct to a degree that the allegations regarding the settlement negotiations may be treated as incidental. (See

---

[6] As explained below, there is a factual dispute regarding the extent to which the negotiations were secret.

*Peregrine Funding, supra,* 133 Cal.App.4th at p. 672 [" 'where a cause of action alleges both protected and unprotected activity, the cause of action will be subject to section 425.16 unless the protected conduct is "merely incidental" to the unprotected conduct' "].)

### A. Anti-SLAPP Cases in the Settlement Negotiation Context

Appellant cites a number of cases for the proposition that settlement negotiations are an exercise of the right to petition and statements made as part of such negotiations are in connection with the underlying lawsuit for purposes of section 425.16, subdivision (e)(2). Directly on point is *GeneThera, Inc. v. Troy & Gould Professional Corp.* (2009) 171 Cal.App.4th 901 [90 Cal.Rptr.3d 218] *(GeneThera)*. There, the plaintiffs alleged that a settlement offer made to another party in a prior action was improper because it was designed to create a conflict of interest for the plaintiffs' then counsel. *(Id.* at pp. 905–906.) The plaintiffs sued, among others, the attorney who made the settlement offer, for intentional interference with contractual relations and negligence. *(Id.* at p. 906.) The *GeneThera* court concluded that both causes of action were based on "communication of an offer to settle the ongoing lawsuit, a matter connected with issues under consideration or review by a judicial body." *(Id.* at p. 908, fn. omitted.) The court held that "[a]n attorney's communication with opposing counsel on behalf of a client regarding pending litigation directly implicates the right to petition and thus is subject to a special motion to strike. [Citation.]" *(Ibid.)* Here, as in *GeneThera*, respondent's claim is based on appellant's communication of an offer to settle and the content of the offer.[7]

Other cases have also held that settlement negotiations are within the scope of section 425.16. In *Navellier v. Sletten* (2002) 29 Cal.4th 82 [124 Cal.Rptr.2d 530, 52 P.3d 703] *(Navellier)*, the plaintiffs sued the defendant for fraud, alleging the defendant had misrepresented his intent to be bound by a release in a previous federal action. *(Id.* at p. 87.) The California Supreme Court held the defendant's negotiation and execution of the release involved " 'statement[s] or writing[s] made in connection with an issue under consideration or review by a . . . judicial body' (§ 425.16, subd. (e)(2)), i.e., the federal district court." *(Id.* at p. 90.) In *Navarro v. IHOP Properties, Inc.* (2005) 134 Cal.App.4th 834, 841–842 [36 Cal.Rptr.3d 385], the plaintiff alleged the defendant made fraudulent promises in exchange for stipulation of judgment in an earlier unlawful detainer action. The Court of Appeal followed *Navellier* in holding that the case before it, "concerning allegedly fraudulent statements within the context of negotiating the stipulated judgment," was within the

---

[7] Because *GeneThera* was decided in February 2009, the trial court in the present case did not have the benefit of that decision when it rendered its ruling on appellant's motion to strike in December 2008.

scope of section 425.16. (*Navarro*, at p. 842.) *Navarro* also cited to *Dowling v. Zimmerman* (2001) 85 Cal.App.4th 1400, 1418–1420 [103 Cal.Rptr.2d 174] (*Dowling*), where the court held that a claim for misrepresentation, arising from the defendant's negotiation of a stipulated settlement of an unlawful detainer action, was within the scope of section 425.16, subdivision (e)(2). (See also *Applied Business Software, Inc. v. Pacific Mortgage Exchange, Inc.* (2008) 164 Cal.App.4th 1108, 1118 [79 Cal.Rptr.3d 849] [entering into a settlement agreement is protected activity].)

### B. *Respondent's Contention That the Negotiations Here Were Unlawful*

■ In the present case, respondent does not dispute that, generally, settlement negotiations are protected activity. However, she contends that appellant's communications were not in the context of valid settlement negotiations because "[w]hile the form of the transaction was stated to be a settlement, its substance was the pursuit of Allstate's business interests and a fraud against" respondent. Although, as detailed below, respondent's contentions raise questions about the propriety of how the settlement negotiations were conducted, appellant was not obligated to show his actions were constitutionally protected as a matter of law. As the California Supreme Court explained in *Navellier, supra,* 29 Cal.4th at page 95: If appellant were required to do so, " 'then the [secondary] inquiry as to whether the plaintiff has established a probability of success would be superfluous.' [Citations.]" (See also *Fox Searchlight Pictures, Inc. v. Paladino* (2001) 89 Cal.App.4th 294, 305 [106 Cal.Rptr.2d 906] ["The problem with [the plaintiff's] argument is that it confuses the threshold question of whether the SLAPP statute applies with the question whether [the plaintiff] has established a probability of success on the merits."]; *Chavez v. Mendoza* (2001) 94 Cal.App.4th 1083, 1089 [114 Cal.Rptr.2d 825] ["a court must generally presume the validity of the claimed constitutional right in the first step of the anti-SLAPP analysis, and then permit the parties to address the issue in the second step of the analysis, if necessary"].)

■ Respondent contends the present case falls within a rule adopted by the California Supreme Court in *Flatley v. Mauro* (2006) 39 Cal.4th 299 [46 Cal.Rptr.3d 606, 139 P.3d 2] (*Flatley*). There, the court held that, where "the defendant concedes, or the evidence conclusively establishes, that the assertedly protected speech or petition activity was illegal as a matter of law," such activity will not support the special motion to strike. (*Id.* at p. 320; see also *id.* at pp. 316–317.) The court explained: "In such a narrow circumstance, where either the defendant concedes the illegality of its conduct or the illegality is conclusively shown by the evidence, the motion [to strike] must be denied. The rationale is that the defendant cannot make a threshold

showing that the illegal conduct falls within the purview of the statute and promotes section 425.16's purpose to 'prevent and deter "lawsuits [referred to as SLAPP's] brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." (§ 425.16, subd. (a).)' [Citation.] If, however, a factual dispute exists about the legitimacy of the defendant's conduct, it cannot be resolved within the first step but must be raised by the plaintiff in connection with the plaintiff's burden to show a probability of prevailing on the merits." (*Flatley*, at p. 316; see also *Cohen v. Brown* (2009) 173 Cal.App.4th 302, 317 [93 Cal.Rptr.3d 24] (*Cohen*); *Paul for Council v. Hanyecz* (2001) 85 Cal.App.4th 1356, 1365–1367 [102 Cal.Rptr.2d 864] (*Paul*), disapproved on another ground in *Equilon, supra*, 29 Cal.4th at p. 68, fn. 5.) In *Flatley* and *Cohen* the evidence showed conclusively that the allegedly protected conduct was extortionate as a matter of law. (*Flatley*, at pp. 328–333; *Cohen*, at pp. 317–318.) In *Paul*, the defendants effectively conceded they were illegally laundering campaign money. (*Paul*, at p. 1367.) The burden is on the party opposing a section 425.16 motion to strike to show that no factual dispute exists. (*Paul*, at p. 1367.) As explained in *Paul*, if a plaintiff contesting the validity of a defendant's exercise of protected rights "cannot demonstrate as a matter of law that the defendant's acts do not fall under section 425.16's protection, then the claimed illegitimacy of the defendant's acts is an issue which the plaintiff must raise *and* support in the context of the discharge of the plaintiff's burden to provide a prima facie showing of the merits of the plaintiff's case." (*Ibid.*; see also *Flatley*, at p. 315 [quoting *Paul* with approval].)

■ Respondent's brief on appeal includes several poorly developed arguments that the settlement negotiations were unlawful, but she fails to demonstrate the absence of relevant factual disputes.[8] Respondent asserts that appellant's negotiation of the settlement violated Business and Professions Code section 6128, subdivision (a), which prohibits "any deceit or collusion . . . with intent to deceive the court or any party." However, appellant's intent is a disputed factual issue. Appellant submitted evidence to the court below that the ultimate settlement was preceded by disclosure to respondent and an opportunity for her to express her preference regarding options to settle the cross-complaint. Moreover, he averred in his declaration that he never misrepresented facts to respondent, concealed any evidence from her, or intended to cause her any emotional distress.

---

[8] By letters dated January 22 and January 29, 2010, following submission of this case after oral argument, respondent requested an opportunity to provide supplemental briefing regarding several issues relevant to the legality of appellant's conduct. Because both parties had adequate opportunity to address those issues in the regular briefing on appeal, this court denied the requests.

■ Respondent also asserts that the settlement violated Penal Code section 550, subdivision (a)(1), which prohibits presentation of any "false or fraudulent claim for the payment of a loss or injury, including payment of a loss or injury under a contract of insurance." As relevant to that section, respondent contends the two Association claims settled with appellant's participation were utterly without merit. However, respondent has not shown the claims were without merit as a matter of law, or addressed with reasoned argument and citations to authority any of the other elements of Penal Code section 550, subdivision (a). (See *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784–785 [79 Cal.Rptr.2d 273] (*Badie*).)

■ Finally, respondent contends the negotiations were unlawful under Civil Code section 2860, subdivision (f). Civil Code section 2860 codifies (with clarifications and limitations) the holding in *San Diego Federal Credit Union v. Cumis Ins. Society, Inc.* (1984) 162 Cal.App.3d 358 [208 Cal.Rptr. 494] (*Cumis*), which concluded that an insurer is responsible to pay the reasonable cost for hiring independent counsel for the insured when the insured and insurer have divergent interests due to the insurer's reservation of its right to deny coverage. (*Novak v. Low, Ball & Lynch* (1999) 77 Cal.App.4th 278, 282 [91 Cal.Rptr.2d 453] (*Novak*); *Gafcon, Inc. v. Ponsor & Associates* (2002) 98 Cal.App.4th 1388, 1420 [120 Cal.Rptr.2d 392].) Civil Code section 2860, subdivision (f), provides: "Where the insured selects independent counsel pursuant to the provisions of this section, both the counsel provided by the insurer and independent counsel selected by the insured shall be allowed to participate in all aspects of the litigation. Counsel shall cooperate fully in the exchange of information that is consistent with each counsel's ethical and legal obligation to the insured. Nothing in this section shall relieve the insured of his or her duty to cooperate with the insurer under the terms of the insurance contract." In this case, Allstate retained Reynolds to defend respondent. Respondent contends that she was entitled to *Cumis* counsel (independent counsel), and that she herself was acting as *Cumis* counsel, because Reynolds had a conflict of interest due to Allstate's reservation of rights to deny coverage. However, her entitlement to act as her own *Cumis* counsel is in dispute. Indeed, one of respondent's allegations in the Complaint is that Allstate never recognized her as *Cumis* counsel and never paid her requests for reimbursement for attorney fees. In her brief on appeal, respondent fails to support her contention that she was acting as *Cumis* counsel with adequate argument and citations to the record. (See *Badie, supra*, 67 Cal.App.4th at pp. 784–785.)

■ Moreover, even if we were to assume that respondent was acting as *Cumis* counsel, she has not shown that she or Reynolds was denied an opportunity to participate in the settlement negotiations within the meaning of Civil Code section 2860, subdivision (f). "In general, the insurer is entitled to

control settlement negotiations without interference from the insured. [Citations.] As a result, an insurer normally cannot be liable to the insured if the insurer does no more than settle a claim or suit within the policy's limits. [Citation.]" (*Western Polymer Technology, Inc. v. Reliance Ins. Co.* (1995) 32 Cal.App.4th 14, 24 [38 Cal.Rptr.2d 78] (*Western Polymer*).) The insurer retains this "contractual right to settle a claim as the insurer deems expedient" even if independent counsel is controlling the insured's defense. (*Id.* at p. 22.) This right to settle is reflected in the applicable insurance policy, which states that Allstate "may investigate or settle any claim or suit for covered damages against an insured person." (Boldface omitted.) (See *Western Polymer*, at p. 24 [noting that this type of clause is not unusual].) Accordingly, even if Civil Code section 2860 was applicable, Allstate had, as a general matter, the right to settle covered claims in the cross-complaint.

There is a factual dispute in the record regarding whether respondent and Reynolds had an adequate opportunity to participate in negotiation of the settlement. Appellant's evidentiary submission below demonstrated that the settlement negotiations consisted of a series of brief e-mail exchanges and, after respondent objected to settlement of the entirety of the cross-complaint without an opportunity for her to seek an award of fees, appellant kept her informed of the further attempts to reach a settlement and offered to let her choose between a full or partial settlement. Appellant also averred in his declaration that he discussed the negotiations with Reynolds. Respondent has not "conclusively demonstrated" (*Flatley, supra,* 39 Cal.4th at p. 319) that the settlement negotiations in this case were conducted in an unlawful manner. (See *Western Polymer, supra,* 32 Cal.App.4th at p. 22 [no violation of Civ. Code, § 2860, subd. (f), where independent counsel did not negotiate amount of settlement but did "participate in the settlement process by assuring that the final agreement preserved [the insured's] right to proceed with its cross-complaint"]; cf. *Novak, supra,* 77 Cal.App.4th at pp. 280–282 [insured and his counsel had no knowledge of settlement until after its completion].)[9]

### C. *The Other Cases Relied Upon by the Trial Court and Respondent*

This case is distinguishable from the cases cited by the trial court in its tentative decision. In *Freeman v. Schack* (2007) 154 Cal.App.4th 719, 722 [64 Cal.Rptr.3d 867], the plaintiffs sued their former attorney for breach of contract, professional negligence, and breach of fiduciary duty based on allegations that he abandoned them to represent adverse interests. The court concluded that the "principal thrust of the conduct underlying [the plaintiffs'] causes of action" was not the filing or settlement of litigation, but rather the

---

[9] We need not and do not consider whether a showing of a violation of Civil Code section 2860, subdivision (f), is sufficient to render an activity unprotected for the purposes of the *Flatley* rule.

attorney's "undertaking to represent a party with interests adverse to [the] plaintiffs, in violation of the duty of loyalty he assertedly owed them." (*Id.* at p. 732; see also *United States Fire Ins. Co. v. Sheppard, Mullin, Richter & Hampton LLP* (2009) 171 Cal.App.4th 1617, 1628 [90 Cal.Rptr.3d 669] ["the principal thrust of the misconduct averred in the underlying complaint is the acceptance by [former counsel] of representation adverse to [the plaintiff]"];[10] *Kolar v. Donahue, McIntosh & Hammerton* (2006) 145 Cal.App.4th 1532, 1539 [52 Cal.Rptr.3d 712] ["attorney malpractice is not a protected right"].) In the present case, appellant represented Allstate, not respondent, and respondent's causes of action do arise from appellant's conduct in negotiating a settlement with the Association, rather than the fact of his representation of Allstate. The Complaint raises issues regarding the propriety of the settlement agreement, but appellant's negotiations with the Association did constitute petitioning activity on behalf of Allstate, which had ultimate authority over settlement of the covered claims.

Finally, this case is distinguishable from other cases cited by respondent. In *Beach v. Harco National Ins. Co.* (2003) 110 Cal.App.4th 82, 93 [1 Cal.Rptr.3d 454] (*Beach*), an insurance company was sued for bad faith due to its handling of an uninsured motorist claim. The Court of Appeal concluded section 425.16 was inapplicable because "[t]he bad faith behavior ascribed to [the] defendant involve[d] nonaction and delays" and because the complaint did not refer to any actionable communications. (*Beach*, at p. 93.) Moreover, "[t]he outlined actions (or nonactions) occurred as part of a coverage dispute between an insurer and its insured, and occurred long before any arbitration or other proceeding commenced." (*Id.* at p. 94.) In *Gallimore*, the plaintiff alleged that the defendant "engaged in certain claims handling misconduct and violated a number of statutory and regulatory rules. . . . [The p]laintiff seeks no recovery from State Farm for State Farm's activity in *communicating information* to [the California Department of Insurance], nor does he allege that any such communication was wrongful or the cause of any injury to him." (*Gallimore, supra*, 102 Cal.App.4th at p. 1399.) In contrast to claims in both *Beach* and *Gallimore*, respondent's claims in this case are based on appellant's communications during negotiations with counsel for the Association, in connection with the cross-complaint.[11]

---

[10] On July 24, 2009, respondent filed a motion for judicial notice of a lower court order in *United States Fire Ins. Co. v. Sheppard, Mullin, Richter & Hampton LLP, supra*, 171 Cal.App.4th 1617. On August 12, 2009, this court deferred ruling on the request. We now deny the request for judicial notice as irrelevant to the issues before us. (*People v. Curl* (2009) 46 Cal.4th 339, 360, fn. 16 [93 Cal.Rptr.3d 537, 207 P.3d 2].)

[11] Respondent asserts that "the misconduct was in paying [r]espondent's adversary to eliminate her insurer's financial obligations." She also asserts that appellant's negotiations were evidence of the fraud perpetrated on her, rather than the actual basis for the action. However,

Equally distinguishable are *World Financial Group, Inc. v. HBW Ins. & Financial Services, Inc.* (2009) 172 Cal.App.4th 1561, 1572 [92 Cal.Rptr.3d 227], and *Kurwa v. Harrington, Foxx, Dubrow & Canter, LLP* (2007) 146 Cal.App.4th 841, 848–849 [53 Cal.Rptr.3d 256], in which the challenged communications lacked any connection to ongoing litigation.

For the stated reasons, the trial court erred in concluding that respondent's claims against appellant are outside the scope of section 425.16, subdivision (e)(2).

III. *Probability of Prevailing*

 In order to establish a probability of prevailing for purposes of section 425.16, subdivision (b)(1), " 'the plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." ' [Citation.]" (*Navellier, supra,* 29 Cal.4th at pp. 88–89.) The plaintiff's burden "has been likened to that in opposing a motion for nonsuit or a motion for summary judgment." (*Peregrine Funding, supra,* 133 Cal.App.4th at p. 675.) However, a defendant that advances an affirmative defense to the plaintiff's claims bears the burden of proof on the defense. (*Id.* at p. 676.) In the present case, appellant contends, among other things, that his alleged conduct cannot provide the basis for liability on respondent's claims under the litigation privilege of Civil Code section 47, subdivision (b).[12] Accordingly, appellant bears the burden of proving respondent has no probability of prevailing against that defense.

 The principal purpose of the Civil Code section 47 litigation privilege " 'is to afford litigants and witnesses [citation] the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions. [Citations.]' [Citation.] The privilege promotes effective judicial proceedings by encouraging ' "open channels of communication and the presentation of evidence" ' without the external threat of liability. [Citation.] The litigation privilege 'further promotes the effectiveness of judicial proceedings by encouraging attorneys to zealously protect their clients' interests.' [Citation.] 'Finally, in immunizing participants from liability for torts arising

---

even assuming that the payment to the Association was improper, appellant's role and the basis for his asserted liability was his negotiation of the agreement, which is conduct within the scope of section 425.16.

[12] Civil Code section 47, subdivision (b), states in relevant part: "A privileged publication or broadcast is one made: [¶] . . . [¶] (b) In any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable pursuant to Chapter 2 (commencing with Section 1084) of Title 1 of Part 3 of the Code of Civil Procedure . . . ."

from communications made during judicial proceedings, the law places upon litigants the burden of exposing during trial the bias of witnesses and the falsity of evidence, thereby enhancing the finality of judgments and avoiding an unending roundelay of litigation, an evil far worse than an occasional unfair result. [Citations.]' [Citation.]" (*Home Ins. Co. v. Zurich Ins. Co.* (2002) 96 Cal.App.4th 17, 23 [116 Cal.Rptr.2d 583] (*Home Ins.*).) " 'Although originally enacted with reference to defamation actions alone [citation], the privilege has been extended to *any* communication, whether or not it is a publication, and to *all* torts other than malicious prosecution. [Citations.] Thus, the privilege has been applied to suits for fraud [citations], negligence and negligent misrepresentation [citation], and interference with contract [citation].' [Citation.]" (*Ibid.*)

"[T]he litigation 'privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action. [Citations.]' [Citation.]" (*Sylmar Air Conditioning v. Pueblo Contracting Services, Inc.* (2004) 122 Cal.App.4th 1049, 1058 [18 Cal.Rptr.3d 882].) There is little real dispute that appellant has shown that those elements are present here. It is instructive to compare this case to *Home Ins.* There, a predecessor of Zurich Insurance Company (Zurich) assumed the defense of a personal injury action. (*Home Ins., supra*, 96 Cal.App.4th, at p. 20.) During the litigation, defense counsel allegedly made a fraudulent statement about policy limits, saying they were $15,000 when they were really $500,000. (*Id.* at p. 21.) Based on that representation, the personal injury plaintiffs settled for $15,000. (*Id.* at p. 21.) Upon learning of the misrepresentation, Home Insurance Company (Home), which paid a substantial sum to the personal injury plaintiffs in arbitration, sued Zurich for fraud. (*Id.* at pp. 20–21.) The Court of Appeal affirmed dismissal of the case on demurrer, holding that the action was barred by the litigation privilege. (*Id.* at p. 28.)

The *Home Ins.* court's analysis of the four elements of the defense is fully applicable in this case: "The litigation privilege applies to the statement alleged as the basis of Home's fraud action as the statement meets the four criteria of the 'usual formulation.' The statement was made in a judicial proceeding. 'The privilege attaches even though the publication was made outside a courtroom, as many portions of a "judicial proceeding" occur outside of open court. [Citations.]' [Citation.] It applies to statements made by counsel during settlement negotiations. [Citations.] Where the insurer provides a defense for a party, the realities of the insurer's role in litigation dictate that the insurer be treated as an authorized party for purposes of the litigation privilege. [Citation.] The statement meets the third and fourth

criteria as it was made to induce settlement of" a lawsuit. (*Home Ins., supra,* 96 Cal.App.4th at p. 24; see also *Dowling, supra,* 85 Cal.App.4th at p. 1422 [applying litigation privilege to an action based on statements the attorney defendant made while negotiating a settlement].)

Respondent attempts to distinguish *Home Ins.,* contending the settlement negotiations in this case were actually "business discussions" for the purpose of terminating Allstate's obligation to pay for respondent's defense. However, even assuming that was Allstate's objective, the means it selected was a settlement of the covered claims in the Association's cross-complaint after respondent rejected the terms of the total settlement negotiated by appellant. Respondent provides no citations to authority or reasoned analysis why Allstate's subjective goal should sever the obvious connection the negotiations had to the litigation between respondent and the Association. Respondent also contends that the Complaint seeks to hold appellant liable not for his communications, but for the fraud perpetrated on her as evidenced by the settlement negotiations. Although Civil Code section 47 "does not apply to *noncommunicative* conduct and does not bar the *evidentiary* use of privileged communications in otherwise allowable actions" (*Doctors' Co. Ins. Services v. Superior Court* (1990) 225 Cal.App.3d 1284, 1298 [275 Cal.Rptr. 674]), respondent's causes of action against appellant are based on his *communications* with Windust regarding settlement of the cross-complaint. That is the nature of his alleged participation in the fraudulent scheme.[13] (See 225 Cal.App.3d at p. 1299 ["Characterizing Doctors' [Company Insurance Services] conduct as 'destruction' of evidence does not alter the fact that the 'destruction' was accomplished entirely by statements made in the litigation."].)

In arguing the litigation privilege is inapplicable, respondent also relies on *Shafer v. Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone* (2003) 107 Cal.App.4th 54 [131 Cal.Rptr.2d 777] (*Shafer*), which considered a lawyer's liability for fraud in light of Insurance Code section 11580. Generally speaking, a judgment creditor of an insured may sue the insurer under the insured's policy to recover on a judgment. (Ins. Code, § 11580, subd. (b)(2).)[14] Under the statute, the judgment creditor has an independent

---

[13] Respondent does not argue that she has a probability of prevailing on her causes of action against appellant even if the claims cannot be based on his negotiation of the settlement agreement with the Association. (See *Jacob B. v. County of Shasta* (2007) 40 Cal.4th 948, 957 [56 Cal.Rptr.3d 477, 154 P.3d 1003] [" 'if the gravamen of the action is communicative, the litigation privilege extends to noncommunicative acts that are necessarily related to the communicative conduct . . . . Stated another way, unless it is demonstrated that an independent, noncommunicative, wrongful act was the gravamen of the action, the litigation privilege applies.' "].)

[14] Section 11580, subdivision (b) of the Insurance Code requires that liability insurance policies, with exceptions not relevant here, contain a provision stating: "(2) . . . that whenever

cause of action against the insurer to enforce the insurer's obligation to indemnify the insured. (*Shafer*, at p. 68.) In *Shafer*, the insurer's counsel misrepresented the scope of the insurance coverage to the judgment creditors. (*Id.* at pp. 74–75.) *Shafer* held that the litigation privilege did not apply because application of the privilege would undermine the policies behind Insurance Code section 11580. (*Shafer*, at pp. 77–78.) As part of its discussion, the *Shafer* court distinguished *Home Ins., supra*, 96 Cal.App.4th 17, because that case did not involve Insurance Code section 11580. (*Shafer*, at p. 82.)

The present case does not involve Insurance Code section 11580, and there are no allegations of express misrepresentations to respondent. In fact, *Shafer* cautioned that its holding was inapplicable to cases such as that before this court: "Our analysis of the litigation privilege is based on the principles furthered by [Insurance Code] section 11580 and the case law recognizing that an attorney may be held liable for making fraudulent statements to a nonclient. We do not mean to suggest that coverage counsel may be held liable for 'bad faith' conduct in violation of the covenant of good faith and fair dealing. That type of liability may be imposed only on the insurer. [Citations.]" (*Shafer, supra*, 107 Cal.App.4th at p. 82, fn. 7.) Respondent's claim is more like a bad faith claim than like the false representation claim in *Shafer*. In her brief on appeal, respondent asserts that "[a]ppellant was the principal actor who as Allstate's agent attempted to and did defraud its insured, breached the contracts of insurance, and violated the insurer's duty of good faith and fair dealing in the policies." Similarly, respondent asserts that the misconduct in this case was in "paying [the Association] to eliminate [Allstate's] financial obligations." Appellant's alleged conduct was the negotiation of the settlement; neither the Complaint nor respondent's brief on appeal describe any material factual misrepresentations by appellant.

Because the Civil Code section 47 litigation privilege applies as a matter of law, respondent cannot demonstrate a probability of prevailing on her causes of action against appellant.[15] On remand, we will direct the trial court to grant appellant's motion to strike. (*Seelig v. Infinity Broadcasting Corp.* (2002) 97 Cal.App.4th 798, 812–813 [119 Cal.Rptr.2d 108].)

---

judgment is secured against the insured . . . in an action based upon bodily injury, death, or property damage, then an action may be brought against the insurer on the policy and subject to its terms and limitations, by such judgment creditor to recover on the judgment." If that provision does not appear in a policy, it is implied by law. (Ins. Code, § 11580.)

[15] Because we conclude respondent's causes of action against appellant are barred by Civil Code section 47, we need not consider whether she has demonstrated a probability of prevailing based on an analysis of the elements of the claims. Moreover, we state no opinion on whether Allstate may be liable for any breach of duty to respondent.

## DISPOSITION

The trial court's order denying appellant's motion to strike under section 425.16 is reversed. The matter is remanded with instructions to vacate the order, enter a new order granting the motion, and conduct further proceedings consistent with this decision.

Needham, J., and Bruiniers, J., concurred.

A petition for a rehearing was denied March 9, 2010, and respondent's petition for review by the Supreme Court was denied May 20, 2010, S181891.