Filed 12/17/25  Rodriguez v. Gutierrez CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| ROBERT RODRIGUEZ,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>OLIVER GUTIERREZ et al.,<br><br>        Defendants and Respondents. | A171274<br><br>(Contra Costa County<br>Super. Ct. No. 21CV002661) |

Attorney Robert Rodriguez briefly represented Yesenia Cruz in her divorce action until the state bar suspended his license to practice law.[1]  Cruz then retained Oliver Gutierrez, who negotiated a settlement.  Rodriguez sued Cruz, Gutierrez, Gutierrez's law firm, and others for allegedly outstanding attorney fees and other relief.

Gutierrez moved to dismiss the action against himself and his firm (jointly, "Gutierrez") as strategic litigation against public

---

[1] His license to practice law was later revoked.  We take judicial notice of the relevant state bar records.  (Evid. Code, § 452, subd. (h).)

participation. (Code Civ. Proc., § 425.16[2] (the anti-SLAPP statute).) The trial court granted the motion, finding the action arose from protected speech and that Rodriguez failed to establish a probability of prevailing. We affirm.

## I. BACKGROUND

Cruz retained Rodriguez to represent her in her marital dissolution in late 2020, but was forced to find new counsel some five months later after the state bar suspended his license for misconduct. In May 2021 Cruz engaged family law specialist Gutierrez to replace him. In June Rodriguez notified her he had placed an attorney fees lien on the proceeds of any recovery from the divorce action. Cruz forwarded the notice to Gutierrez.

Upon review, Gutierrez concluded the purported lien was invalid for multiple reasons. First, Rodriguez had not brought a required separate action to establish the lien's existence, determine its amount, and enforce it against Cruz. Second, Rodriguez's retainer agreement neither explicitly nor implicitly authorized him to seek payment for his services through an attorney's lien.) Finally, the fees he claimed were largely dated after the bar suspended him.

Rodriguez filed notice of his lien in the trial court and sued Cruz and her husband, J.C., for unpaid attorney fees and other relief. Gutierrez subsequently negotiated a settlement of the divorce action. The settlement agreement required that Cortez pay Cruz monthly child and spousal support and cover

---

[2] Undesignated statutory references are to the Code of Civil Procedure.

Gutierrez's attorney fees, but otherwise provided no monetary relief. On June 6, 2022, the trial court entered judgment on the settlement.

Eighteen months later, Rodriguez filed an amended complaint naming five new defendants, including Gutierrez,[3] and adding causes of action for "conversion/embezzlement"; intentional and negligent interference with prospective economic advantage; "inducing breach of contract/intentional interference with contractual relations"; intentional and negligent infliction of emotional distress; aiding and abetting multiple intentional torts; trespass to personal property; constructive trust; breach of the implied covenant of good faith and fair dealing; breach of fiduciary duty; constructive fraud; civil conspiracy; and "implementation of lien."

As factual support, Rodriguez alleged that, acting with culpable intent, the defendants appropriated at least $10,132.46 in fees to which he was entitled; concealed their misappropriation from Rodriguez; disregarded and repudiated his attorney fees lien; gave Cruz the money secured by the lien and took it for themselves; advised her she possessed no funds subject to the lien; advised her not to cooperate with him, honor his retainer agreement, or pay his fees; and refused his request to account for any settlement proceeds in her possession or control.

---

[3] The complaint refers jointly to all of the new defendants as " 'LAW OFFICE' Defendants" without distinguishing between them.

Gutierrez moved to strike the action under the anti-SLAPP statute, asserting it arose from his protected activity and that Rodriguez could not demonstrate a reasonable probability of succeeding on the merits. The trial court agreed on both points. First, it concluded the claims against Gutierrez arose from his protected role in the marital dissolution case. Second, it found his evidentiary showing defeated Rodriguez's claims as a matter of law.

Rodriguez timely appealed the ensuing order of dismissal. (See Code Civ. Proc. §904.1, subd. (a)(13) [order dismissing case under section 425.16 is immediately appealable].)

## II. DISCUSSION

### A. The Anti-SLAPP Statute

The Legislature enacted the anti-SLAPP statute to combat harassing lawsuits designed to chill the exercise of constitutional free speech and petition rights by weeding out, at an early stage, meritless claims arising from such protected activity. (*Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931, 940 (*Sweetwater*); *Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1060 (*Park*).) The statute is construed broadly to encourage participation in matters of public significance and ensure such participation is not chilled through abuse of the judicial process. (§425.16, subd. (a).)

Resolution of an anti-SLAPP motion involves two steps. First, the moving defendant must show the alleged acts supporting the plaintiff's claims arose from activity protected by section 425.16. (*Sweetwater, supra,* at p. 940; *Park, supra,* at

4

p. 1061.)  Protected activities are those undertaken "in furtherance of the person's right of petition or free speech . . . in connection with a public issue."  (§425.16, subds. (b)1), (e).)  As relevant here, they include "any written or oral statement or writing made in connection with an issue under consideration or review by a . . . judicial body."  (§425.16, subd. (e)(2).)

At this first stage the defendant bears the burden of identifying the allegations of protected activity and the claims for relief premised on them.  (*Michael K. v. Cho* (2025) 113 Cal.App.5th 1, 8 (*Michael K.*).)  If the court determines the complaint seeks relief based on allegations arising from protected activity, it proceeds to the second step and the burden shifts to the plaintiff to show, for each claim arising from protected activity, that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the plaintiff's evidence is credited. (*Sweetwater, supra,* 6 Cal.5th at p. 940; *Michael K., supra,* at pp. 7–8.)  The court considers the pleadings and supporting and opposing evidence " 'in a summary-judgment-like procedure' " to assess the parties' respective claims and defenses.  (*Sweetwater, supra,* at pp. 940–941.)

We exercise our independent judgment to determine whether the motion to strike should have been granted.  (*Park, supra,* 2 Cal.5th at p. 1067.)

### B. Analysis

#### 1. Protected Activity

The trial court here found Rodriguez's claims against Gutierrez were intrinsically premised on his protected activities in the course of representing Cruz, and, accordingly, fell squarely within the " 'fairly expansive' " (*Seltzer v. Barnes* (2010) 182 Cal.App.4th 953, 962 (*Seltzer*)) definition of protected activity. We agree.

"On the 'arising from' requirement [citation], the defendant must show 'the defendant's act underlying the plaintiff's cause of action [was] itself' a protected act.' " (*Michael K.*, *supra*, 113 Cal.App.5th at p. 8.) "[L]itigation that takes place outside of court may be protected under the anti-SLAPP statute. In the anti-SLAPP context, ' "[a]ny act" includes communicative conduct such as the filing, funding, and prosecution of a civil action.' [Citation.] This includes conduct ranging from filing an insurance claim as a prerequisite to litigation [citation], to counseling a tenant in anticipation of litigation [citation], to soliciting litigation by others [citation], to communications in the course of settlement negotiations.) (*Timothy W. v. Julie W.* (2022) 85 Cal.App.5th 648, 658; *see also Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1259, 1267–1268 [attorney's statement warning client's customers not to do business with potential defendant was protected activity].) Even "funding an attorney's services to prosecute a lawsuit, as well as soliciting litigation funding, are themselves protected acts in furtherance of

6

petitioning activity." (*Michael K., supra,* 113 Cal.App.5th at p. 12.)

Rodriguez appropriately does not dispute that the anti-SLAPP statute extends to an attorney's activities undertaken in furtherance of and in effectuation of a settlement. (See, e.g., *Michael K., supra,* at pp. 10–11; *O&C Creditors Group, LLC v. Stephens & Stephens XII, LLC* (2019) 42 Cal.App.5th 546, 566 (*O&C Creditors*); *Seltzer, supra,* 182 Cal.App.4th at p. 963.) To determine whether his claims against Gutierrez arise from such protected activity we " 'consider the elements of [each] challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability.' " (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009; *Michael K.*, *supra,* 113 Cal.App.5th at pp. 8–9.)

The underlying actions here, as alleged, are that Gutierrez disregarded the lien; appropriated funds subject to it or gave them to Cruz; concealed those acts from Rodriguez; advised Cruz to breach Rodriguez's retainer agreement; advised her to not cooperate with him or pay his fees; and conspired with Cruz to conceal the settlement. Contrary to Rodriguez's contention that they " 'merely provide context' " for his legal claims (see *Bonni v. St. Joseph Health System*, *supra*, 11 Cal.5th at p. 1012), these factual allegations are inseparable from Gutierrez's role in the marital dissolution case.

*O&C Creditors, supra,* 42 Cal.App.5th 546, involving the settlement of a coverage dispute, is instructive here. A settlement agreement between attorneys and their insurer

7

allocated the settlement proceeds.  (*Id.* at p. 555.)  In ensuing litigation over fees and a fee lien, the trial court granted an anti-SLAPP motion that targeted two causes of action: one for breach of trust against the insurer for improperly disbursing settlement proceeds and another, based on the same conduct, for interfering with prospective business relations.  (*Id.* at p. 559.)

The appellate court affirmed.  (*O&C Creditors, supra,* at p. 576.)  "Far from providing mere evidentiary support for or being incidental to the challenged claims, the settlement agreement is the crux of the cross-defendants' allegedly wrongful conduct.  O&C Creditors cannot allege its claims without the settlement agreement—both because the allegedly wrongful 'disbursement' of 'proceeds' occurred only because of the settlement agreement and because the alleged attorney lien could not arise without the settlement.  O&C Creditors' claims are thus based on and arise from a purportedly wrongful settlement agreement" subject to section 415.16.  (42 Cal.App.5th at p. 571.)  So too here.

The authorities on which Rodriguez relies do not suggest otherwise.  In *Drell v. Cohen* (2014) 232 Cal.App.4th 24 (*Drell*), a personal injury plaintiff hired new counsel after his first attorney withdrew from the representation.  *(Id.* at p. 27.)  The first attorney asserted a lien on any recovery in the litigation, but, after new counsel settled the case, the insurer paid the proceeds jointly to the new attorney and plaintiff.  (*Ibid.*)

New counsel sued for declaratory relief as to the attorneys' respective entitlement to fees and the first attorney moved to

8

strike under section 425.16. (*Drell, supra,* 232 Cal.App.4th at pp. 27–28.) In this context, the court held the complaint did not arise from protected activity. It explained: "a complaint is not a SLAPP suit unless the gravamen of the complaint is that defendants acted wrongfully by engaging in the protected activity. The complaint here did not allege defendants engaged in wrongdoing by asserting their lien. Rather, the complaint asked the court to declare the parties' respective rights to attorney fees." (*Id.* at p. 30.) Here, in contrast, Rodriguez's legal claims are expressly premised on allegedly wrongful actions Gutierrez undertook in litigating and settling his client's case.

Rodriguez's reliance on *California Back Specialists Medical Group v. Rand* (2008) 160 Cal.App.4th 1032 is also unpersuasive. Rand, an attorney, disbursed proceeds from his clients' personal injury actions without notifying treating doctors who had asserted medical liens on the recovery. (*Id.* at p. 1035.) He then moved to strike the doctors' ensuing suit to enforce those liens, asserting that he questioned the reasonableness and necessity of their medical care and that the treating physician was under investigation and had been reprimanded by the state medical board. (*Id.* at pp. 1035–1036.)

The court rejected his contention that his activities were protected because he had disbursed the funds as an attorney and was representing his clients in the underlying actions. (*California Back Specialists Medical Group v. Rand, supra,* 160 Cal.App.4th at p. 1037.) Those factors, it reasoned, were "only collateral or incidental to the purpose of the transaction or

9

occurrence underlying the complaint." (*Ibid.*)  The complaint, rather, was based on the doctors' dispute with Rand about the validity and satisfaction of their lien—"*issues that were never under consideration in any court or official proceeding*" before the doctors filed suit.  (*Ibid.*, italics added.)  Here, in contrast, Rodriguez's complaint plainly targets Gutierrez's litigation activities on behalf of Cruz in her divorce action—unquestionably a court proceeding—including his legal assessment that the lien was invalid.

Rodriguez further contends, without citation to the record, that Gutierrez engaged in "criminal conduct that alleviated his privileges."  (See *Flatley v. Mauro* (2006) 39 Cal.4th 299, 305 [anti-SLAPP does not apply to illegal acts].)  Not so.  As the trial court noted, unconceded allegations of illegal conduct that are unsupported by conclusive evidence, as is the case here, do not preclude application of the anti-SLAPP statute.  (*See Laker v. Board of Trustees of California State University* (2019) 32 Cal.App.5th 745, 761–762.)

## 2. Probability of Prevailing

The second anti-SLAPP step utilizes a "summary-judgment-like" procedure to determine whether the plaintiff has shown a probability of prevailing on the merits.  (*Sweetwater, supra,* 6 Cal.5th at p. 940.)  The plaintiff need only show the complaint is legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment.  (*Ibid.*)  Minimal merit is enough to defeat the motion.  (*Ibid.*)

10

We review the trial court's finding on this question independently, assuming the truth of the plaintiff's evidence and assessing the defendant's only to determine whether it defeats the plaintiff's showing as a matter of law.  (*Sweetwater, supra,* 6 Cal.5th at p. 940.)  We limit our review to those specific issues as to which Rodriguez has provided reasoned legal argument supported by pertinent citation to authority and the record (see Cal. Rules of Court, rule 8.204(a)(1)(B) & (C);[4] *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 (*Benach*)). In so doing, we agree with the trial court that the claims against Gutierrez fail as a matter of law.

While the trial court's detailed ruling identifies multiple failings in Rodriguez's various claims, we are satisfied that they are, at least in large part, barred by the litigation privilege. Codified at Civil Code section 47, subdivision (b), " ' "the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [has] some connection or logical relation to the action." ' " (*Timothy W. v. Julie W., supra,* 85 Cal.App.5th 648, 661–662.) Like the anti-SLAPP statute, the privilege is broadly construed to protect a litigant's right to access the courts without fearing subsequent derivative tort actions.  (*Rohde v. Wolf* (2007) 154 Cal.App.4th 28, 37.)

---

[4] Subsequent references to rules are to the California Rules of Court.

Here, the trial court found the litigation privilege barred all counts based on Gutierrez " 'advising' Cruz, 'causing' Cruz [to] do things,' and aiding and abetting Cruz."[5] It explained: "Any communications to Cruz regarding either her marriage settlement or her obligations to plaintiff based on his prior work on the case would bear a 'connection or logical relation' to the case in the family law court" and, accordingly, were privileged. We agree. All causes of action arising from Gutierrez's alleged communications with Cruz are barred.

Rodriguez asserts the privilege is inapplicable because some part of the alleged wrongdoing fell within exceptions for criminal conduct and proceedings where application of the privilege would abrogate a specific statute. He has not supported these assertions with reasoned legal argument supported by pertinent authority and citation to the record, so we need not address their merits. (See rule 8.204(a)(1)(B) & (C); *Benach, supra,* 149 Cal.App.4th at p. 852; see also *People v. Baniqued* (2000) 85 Cal.App.4th 13, 29 [argument developed only in reply brief is forfeited].) "It is not our place to construct theories or arguments to undermine the judgment and defeat the presumption of correctness. When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived." (*Benach, supra,* at p. 852.)

_____

[5] E.g., intentional and negligent interference with prospective economic advantage, inducing breach of contract/intentional interference with contract, aiding and abetting, and conspiracy.

We are also satisfied that any other claims based on Gutierrez's alleged impairment of lien, assuming they are not based on communications having some logical relation to the litigation, are barred for a different reason. Various causes of action—e.g., conversion, embezzlement, trespass to personal property, constructive trust, breach of fiduciary duty and implementation of lien—sought to recover the fees allegedly secured by the lien. But, as the trial court correctly observed, a discharged attorney cannot sue to enforce a fee lien against a successor attorney without first establishing the validity and value of the lien in a separate, independent action against the client. (*Mojtahedi v. Vargas* (2014) 228 Cal.App.4th 974, 977–978.) Rodriguez did not do so, and he provides no authority allowing him to bypass this requirement by pursuing a single, simultaneous action against his former client and her successor counsel.

Finally, woven throughout Rodriguez's brief are his refrains that he and Gutierrez were neither parties nor witnesses in the divorce action and that the "phantom" marital settlement agreement was not proffered as evidence. He fails to explain why these points matter or provide relevant legal authority and reasoning. Nor, similarly, does he provide pertinent record citations for his repeated claim that the trial court "failed to consider" his legal arguments and evidence—a refrain refuted by the court's thoughtful and thorough written order. No error is evident. See *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564

13

[where record is silent, all presumptions favor trial court's ruling].)

### III.   DISPOSITION

The order is affirmed.  Gutierrez is entitled to his costs on appeal.  (Rule 8.278(a) &(b).)

MOORMAN, J.*

WE CONCUR:

STREETER, Acting P. J.
GOLDMAN, J.

---

*Judge of the Mendocino Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

15