Filed 5/27/20; Certified for Publication 6/18/20 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| TRILOGY PLUMBING, INC., | |
| Plaintiff and Respondent, | G057796 |
| v. | (Super. Ct. No. 30-2017-00929323) |
| NAVIGATORS SPECIALITY INSURANCE COMPANY, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from an order of the Superior Court of Orange County, Glenda Sanders, Judge.  Affirmed.

Greenan, Peffer, Sallander & Lally, Robert L. Sallander, Jr., and Robert Glenn Seeds for Defendant and Appellant.

Kutak Rock and J. David Bournazian for Plaintiff and Respondent.

\*          \*          \*

INTRODUCTION

In this insurance bad faith action, defendant Navigators Specialty Insurance Company (Navigators) appeals from the order denying its special motion to strike under California's anti-SLAPP statute, Code of Civil Procedure section 425.16.[1] (All statutory references are to the Code of Civil Procedure unless otherwise specified.) Plaintiff Trilogy Plumbing, Inc. (Trilogy) alleged that Navigators, as Trilogy's insurer, gave instructions with which Trilogy did not agree to attorneys Navigators had retained to defend Trilogy and wrongfully negotiated settlements without Trilogy's consent. Navigators contends the alleged conduct constituted protected activity under section 425.17, subdivision (e)(2) and, therefore, the trial court erred by denying the anti-SLAPP motion.

We affirm. The allegations challenged by the anti-SLAPP motion describe Navigators' mishandling of the claims process with regard to 33 different lawsuits involving Trilogy. While the alleged acts were generally connected to litigation, they did not include any written or oral statement or writing made in connection with an issue under consideration or review by a judicial body and therefore do not constitute protected activity under section 425.16.

BACKGROUND

I.

THE AMENDED COMPLAINT

Trilogy filed an amended complaint against Navigators alleging claims for breach of contract, breach of the implied covenant of good faith and fair dealing, fraud,

---

[1] "SLAPP is an acronym for 'strategic lawsuit against public participation.'" (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 732, fn. 1.) We refer to Navigators' special motion to strike as "the anti-SLAPP motion."

and unfair business practices. The following is a summary of the allegations supporting Trilogy's claims.

Navigators issued two insurance policies to Trilogy; each had a $5,000 deductible "that was reimbursable to the extent that Navigators paid settlement money on Trilogy's behalf." Trilogy was named as a defendant in at least 33 construction defect cases. Trilogy tendered some but not all of the construction defect cases to Navigators for defense and indemnity. Navigators initially agreed to defend Trilogy in some of the cases and appointed defense counsel at Trilogy's request, but later unilaterally withdrew the defense notwithstanding Navigators' acknowledgment the potential for coverage existed.

In other cases, in which Trilogy did not tender the defense to Navigators, Navigators nevertheless appointed defense counsel for Trilogy and thereafter contended Trilogy had to pay the attorney fees and expenses incurred by that counsel. Navigators argued the policy did not provide for a defense duty that was separate from the deductible.

Trilogy's liability and damages exposure in the lawsuits were "generally non-existent or very, very minimal." Navigators "directed its attorneys to avoid vigorously defending Trilogy and to try to use money Trilogy would have to reimburse to resolve claims. This created circumstances where other law firms Navigators selected were subject to conflicts of interest, often receiving conflicting instructions from their clients due to Navigators' fraudulent representations as to the policy terms and its desire to act in bad faith toward (and to threaten) Trilogy."

When Trilogy and Navigators disagreed and issued contradictory instructions to the attorneys Navigators had retained to defend Trilogy, Navigators refused to address conflicts and refused to provide or pay for independent counsel. Navigators continued to instruct attorneys to take actions directly against Trilogy's

interests and those attorneys, with apparent conflicts of interest, took instruction from Navigators instead of Trilogy.

In one case, Navigators withdrew defense funding entirely notwithstanding it admitted a potential for coverage existed. Navigators initially offered to contribute to the cost of settlement but thereafter refused to pay as promised. Navigators also instructed or allowed its claims handling agents to threaten Trilogy "with various horrific outcomes—including the loss of Trilogy's entire business—unless Trilogy paid money that could not possibly be due and owing to Navigators." Navigators fraudulently represented inflated amounts of deductibles and costs owed by Trilogy. When Trilogy hesitated to pay money it did not owe, Navigators' agents threatened Trilogy in order to extort the payment.

"As a result of Navigators' conduct, Trilogy has been deprived of the policy benefits it was entitled to receive. Trilogy has been forced to pay for insured losses and the cost of defense that Navigators promised to pay. Trilogy has paid the case settlement amounts that Navigators should have paid. Navigators has fraudulently demanded and obtained money from Trilogy that it was not entitled to demand, obtain or keep, and which it has refused to reimburse. Navigators has forced Trilogy to pay for independent counsel Navigators should have paid for . . . and Navigators has forced Trilogy to pay attorneys to compel payment of wrongfully withheld benefits."

Trilogy alleged Navigators breached the terms of its insurance policies by (1) "demanding deductible reimbursement amounts greater than the policies' $5,000 stated deductible, and by seeking reimbursement of ordinary defense fees and expenses as if they were subject to deductible reimbursement"; (2) "claiming a right to seek reimbursement from Trilogy for defense fees and expenses Navigators paid for the benefit of third-party additional insureds"; (3) asserting "the wrap policy [of] other insurance provisions as a ground for denying benefits to Trilogy"; (4) "failing to provide Trilogy with an immediate, full and complete defense, and by providing conflicted

4

defense counsel who took instructions only from Navigators without disclosing conflicts of interest or taking steps to protect against conflicts of interest, and without seeking appropriate waivers"; and (5) "failing to reasonably settle cases and by withdrawing [the] defense as a strategic means of trying to force Trilogy to fund its own settlements, sometimes even when Navigators admitted an existing potential for coverage" existed.

Trilogy further alleged Navigators breached the implied covenant of good faith and fair dealing by (1) fraudulently misrepresenting the terms and benefits available to Trilogy under the policies; (2) making misrepresentations and unlawful threats to obtain from Trilogy money that Navigators was not entitled to receive; (3) using "conflicted counsel to threaten Trilogy and to commit Trilogy to making payments and taking actions [of which] Trilogy did not approve"; (4) "mak[ing] fraudulent assertions against Trilogy and threaten[ing] Trilogy's license and existence as a business in a further effort to try to force Trilogy to make payments it did not owe"; and (5) "repeatedly refus[ing] to properly investigate Trilogy's concerns and repeatedly refus[ing] to communicate with Trilogy and its representatives in good faith."

Trilogy also alleged Navigators engaged in fraud and/or unfair business practices by (1) "misrepresenting its deductible provisions"; (2) "charging inflated, inaccurate deductibles"; (3) "refusing to account for deductible amounts it charges and collects"; (4) "promoting its own interest for the sake of profit above the interests of its insureds"; (5) "exposing insureds to greater liability by disproportionate and piecemeal settlements, disregarding the insured's directives during settlement negotiations"; (6) "failing to offer independent counsel after a conflict of interest became apparent"; (7) "using collection agencies to harass insureds into paying an invalid debt"; (8) "threatening to cancel an insurance policy without cause and proper notice"; and (9) "threatening to revoke or suspend insureds' state contractor license, threatening to take insureds['] businesses away, and unfairly handling its claims in bad faith."

5

## II.

## THE ANTI-SLAPP MOTION

Navigators' anti-SLAPP motion moved to strike from the amended complaint various allegations on the ground they "involve[d] settlement negotiations or communications regarding control of Trilogy's defense that are protected by [section 425.16, subdivision (e)(2)] and no relief can be granted under them."  Navigators moved to strike the following allegations:

- Paragraph 7:  "Trilogy was also deprived of competent conflict-free counsel."

- Paragraph 15:  "Trilogy's liability and damages exposure in the construction defect cases was generally non-existent or very, very minimal, and Trilogy was often dismissed from construction defect suits for waiver of costs or with payment of very little money.  But Navigators directed its attorneys to avoid vigorously defending Trilogy and to try to use money Trilogy would have to reimburse to resolve claims.  This created circumstances where other law firms Navigators selected were subject to conflicts of interest, often receiving conflicting instructions from their clients due to Navigators' fraudulent representations as to the policy terms and its desire to act in bad faith toward (and to threaten) Trilogy."

- Paragraph 16:  "When Trilogy and Navigators did not agree and when they issued contradictory instructions to the defense attorneys Navigators had retained to defend Trilogy, Navigators refused to address the conflict, refused to pay independent counsel, and continued to order and instruct conflicted attorneys to take actions directly against their own client's (Trilogy's) interest."

6

- Paragraph 17: "Navigators and the attorneys it appointed continued to 'represent' Trilogy despite the apparent conflicts of interest, and the attorneys continued to take direction from Navigators, rather than from their actual client, Trilogy. In some instances, even after Navigators' selected attorneys told Navigators about conflicts of interest, Navigators continued to refuse to pay unconflicted defense counsel. Navigators refuses to provide or pay independent counsel under Civil Code section 2860 and California law."

- Paragraph 19: "At no time did Trilogy ever waive the right to independent counsel, to be paid by Navigators, under California Civil Code section 2860 and California law."

- Paragraph 20: "Despite admitted conflicts of interest, Navigators did not offer to pay Trilogy's independent counsel."

- Paragraph 21: "Trilogy never waived its right to independent counsel."

- Paragraph 22: "Navigators did not offer Trilogy independent counsel, and Navigators instead took the position that Trilogy was required to use conflicted counsel to defend."

- Paragraph 23: "Even after [the] involved attorney formally acknowledged conflicts, [N]avigators stubbornly refused to pay independent attorneys Trilogy used to defend and it refused to reimburse Trilogy. Navigators still has not offered independent counsel to Trilogy."

- Paragraph 24: "Instead, Trilogy was required to use conflicted counsel, and Navigators repeatedly ordered those conflicted attorneys to take actions that breached fiduciary duties and duties of

loyalty owed to Trilogy, in order to promote Navigators' interests, and directly against Trilogy's interests."

- Paragraph 50: "Navigators breached the policies by . . . providing conflicted defense counsel who took instruction only from Navigators without disclosing conflicts of interest or taking steps to protect against conflicts of interest, and without seeking appropriate waivers of the conflicts of interest. Specifically, Trilogy did not receive the benefit of qualified defense counsel because the defense attorneys were appointed by Navigators and they did what Navigators told them to do even when their actions directly conflicted with Trilogy's instructions and Trilogy's interests. While these defense attorneys purported to represent Trilogy, they actually represented only Navigators and were taking actions directly contrary to Trilogy's interests."

- Paragraph 57c: "Navigators used conflicted counsel to threaten Trilogy and to commit Trilogy to making payments and taking actions Trilogy did not approve."

- Paragraph 57h: "Navigators exacerbated its claims handling misconduct by trying to fraudulently use attorneys it recognized as conflicted to pressure [T]rilogy into concessions."

- Paragraph 73: "Navigators engages, has engaged, and will likely engage again in fraudulent, deceptive, and unfair business practices, which include . . . *exposing insureds to great liability by disproportionate and piecemeal settlements, disregarding the insured's directives during settlement negotiations* [moving to strike only the italicized part, remainder supplied for context]."

8

THE TRIAL COURT DENIES THE ANTI-SLAPP MOTION; NAVIGATORS APPEALS.

The trial court denied the anti-SLAPP motion. In its May 13, 2019 minute order, the trial court concluded Navigators had failed to meet its burden of showing that the allegations it sought to be stricken from the amended complaint described protected activity within the meaning of section 425.16. The trial court explained that, with the exception of two clauses in paragraph 73, the allegations Navigators sought to be struck did not involve settlement. As to the two clauses in paragraph 73 which referred to settlement, the court stated neither clause alluded to a claim arising from protected settlement communications. The court also stated neither clause alluded to "written or oral statement[s] or writing[s]" within the meaning of section 425.16, subdivision (e)(2). The court observed that although the two clauses alleged activity connected to a proceeding, neither alleged activity connected to "an issue under consideration or review" in a proceeding. (§ 425.16.)

Navigators appealed.

# DISCUSSION

## I.

SECTION 425.16 AND THE APPLICABLE STANDARD OF REVIEW

"A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).)

"The anti-SLAPP statute does not insulate defendants from *any* liability for claims arising from the protected rights of petition or speech. It only provides a

9

procedure for weeding out, at an early stage, *meritless* claims arising from protected activity.  Resolution of an anti-SLAPP motion involves two steps.  First, the defendant must establish that the challenged claim arises from activity protected by section 425.16.  [Citation.]  If the defendant makes the required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success.  We have described this second step as a 'summary-judgment-like procedure.'  [Citation.]  The court does not weigh evidence or resolve conflicting factual claims.  Its inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment.  It accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law.  [Citation.]  '[C]laims with the requisite minimal merit may proceed.'" (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384-385 (*Baral*), fn. omitted.)

In *Baral, supra,* 1 Cal.5th at page 395, the California Supreme Court held the Legislature's choice of the term "motion to strike" reflected the understanding that "an anti-SLAPP motion, like a conventional motion to strike, may be used to attack parts of a count as pleaded." (*Id.* at p. 393.)  Thus, as endeavored by Navigators in its motion, an anti-SLAPP motion may be used to attack specific allegations constituting a claim within a pleaded count.  If the targeted claim amounts to a cause of action "in the sense that it is alleged to justify a remedy," it is subject to an anti-SLAPP motion. (*Id.* at p. 395.)

"We review an order granting or denying an anti-SLAPP motion under the de novo standard and, in so doing, conduct the same two-step process to determine whether as a matter of law the defendant met its burden of showing the challenged claim arose out of protected activity and, if so, whether the plaintiff met its burden of showing probability of success." (*Newport Harbor Offices & Marina, LLC v. Morris Cerullo World Evangelism* (2018) 23 Cal.App.5th 28, 42.)

10

## II.

### NAVIGATORS FAILED TO SHOW TRILOGY'S CLAIMS ARISE FROM PROTECTED ACTIVITY.

In *Rand Resources, LLC v. City of Carson* (2019) 6 Cal.5th 610, 620 (*Rand*), the California Supreme Court stated: "A defendant satisfies the first step of the analysis by demonstrating that the 'conduct by which plaintiff claims to have been injured falls within one of the four categories described in subdivision (e) [of section 425.16]' [citation], and that the plaintiff's claims in fact *arise* from that conduct [citation]. The four categories in subdivision (e) describe conduct '"in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue."'"

Navigators contends, as did the defendants in *Rand, supra,* 6 Cal.5th 610, it showed activity alleged in the amended complaint fell within the protected category of subdivision (e)(2) of section 425.16. In *Rand, supra,* at page 620, the court explained: "According to subdivision (e)(2) of section 425.16, 'any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law' is an '"act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue."' By requiring the communication to be in connection 'with *an issue* under consideration or review' [citation], the terms of subdivision (e)(2) make clear that 'it is insufficient to assert that the acts alleged were "in connection with" an official proceeding.' [Citation.] Instead, '[t]here must be a connection with *an issue* under review in that proceeding.'"

"Assertions that are 'merely incidental' or 'collateral' are not subject to section 425.16. [Citations.] Allegations of protected activity that merely provide context, without supporting a claim for recovery, cannot be stricken under the anti-SLAPP statute." (*Baral, supra,* 1 Cal.5th at p. 394.)

11

In the anti-SLAPP motion, Navigators sought the striking of specific allegations of the amended complaint, quoted *ante*, on the ground they "involve settlement negotiations that are protected by [section 425.16, subdivision (e)(2)]." It is true "courts have adopted 'a fairly expansive view of what constitutes litigation-related activities within the scope of section 425.16.' [Citation.] '"Under the plain language of section 425.16, subdivision (e)(1) and (2), as well as the case law interpreting those provisions, *all* communicative acts performed by *attorneys* as part of their representation of a client in a judicial proceeding or other petitioning context are per se protected as petitioning activity by the anti-SLAPP statute."' [Citation.] Cases construing the anti-SLAPP statute hold that 'a statement is "in connection with" litigation under section 425.16, subdivision (e)(2) if it relates to the substantive issues in the litigation and is directed to persons having some interest in the litigation.' [Citation.] Consequently, because settlement negotiations are regarded as an exercise of the right to petition, communications during such negotiations are regarded as having been made in connection with the underlying lawsuit for purposes of section 425.16, subdivision (e)(2). [Citation.] The protection of the anti-SLAPP statute applies 'even against allegations of fraudulent promises made during the settlement process.' [Citation.] [¶] [However] . . . '*conduct is not automatically protected merely because it is related to pending litigation; the conduct must arise from the litigation.*'" (*Optional Capital, Inc. v. Akin Gump Strauss, Hauer & Feld LLP* (2017) 18 Cal.App.5th 95, 113-114, some italics added.)

Here, Trilogy sued its insurer Navigators; the amended complaint does not name any other defendant, much less name as a defendant any attorney who Navigators retained to represent Trilogy in one or more of the matters cited in the amended complaint. The allegations of the amended complaint that were the object of the anti-SLAPP motion do not refer to any oral or written statements or communicative

12

conduct by anyone, whether in relation to the lawsuits in which Trilogy had been named a defendant, or in the context of settlement discussions.

Instead, the anti-SLAPP motion sought to strike allegations pertaining to Navigators' *conduct* generally in mishandling the claims process. Trilogy alleged that Navigators tried to avoid its obligation to pay fees and costs and retain independent counsel to represent Trilogy under the policies; instead, Trilogy alleged Navigators retained conflicted counsel to represent Trilogy. Such conduct does not arise from any written or oral statement or writing made in connection with an issue under consideration or review by a judicial body within the meaning of section 425.16, subdivision (e)(2). (See *Coretronic Corp. v. Cozen O'Conner* (2011) 192 Cal.App.4th 1381, 1392 (*Coretronic*) [not a SLAPP because claim did not arise from the defendant attorneys' protected activity of representing their clients in pending or threatened litigation but from the concealment of the defendant attorneys' use of the plaintiffs' confidential information to later represent the plaintiffs' adversary]; *Beach v. Harco National Ins. Co.* (2003) 110 Cal.App.4th 82, 93-94 [lawsuit against insurer for bad faith delay in paying uninsured motorist claim held not a SLAPP because it arose from delay in payment, not from insurer's communications with insured in preparation for litigation or arbitration of coverage dispute]; *Gallimore v. State Farm Fire & Casualty Ins. Co.* (2002) 102 Cal.App.4th 1388, 1399 [not a SLAPP because complaint did not arise from communications between State Farm and the Department of Insurance in an official inquiry or proceeding, but from State Farm's claims-handling practices]; *Paul v. Friedman* (2002) 95 Cal.App.4th 853, 857-858, 866-867 [lawsuit by securities broker against former lawyer was not a SLAPP when based on allegations the lawyer in litigating a prior arbitration proceedings conducted an intrusive investigation into the broker's life; appellate court held while the attorney's investigative conduct may have been in connection with a proceeding, it was not in connection with an issue under review in that proceeding and thus was not protected activity].)

13

In *Miller v. Zurich American Ins. Co.* (2019) 41 Cal.App.5th 247, 256 (*Miller*), an insurance coverage action, the defendant insurance company appealed from the order denying its anti-SLAPP motion and the appellate court affirmed. The *Miller* court noted the plaintiff in that case, like Trilogy in the instant case, sought relief from the insurance company, and not against any counsel, "based on the overarching premise that [the insurance company] did not meet its duty to defend as it failed to provide independent conflict-free counsel to represent them in defending against [a] counterclaim." (*Id.* at p. 257.)

The court stated: "Despite [the insurance company]'s blanket contention to the contrary, '[n]ot all attorney conduct in connection with litigation, or in the course of representing clients, is protected by section 425.16.' [Citations.] 'There is a "distinction between activities that form the basis for a claim and those that merely lead to the liability-creating activity or provide evidentiary support for the claim." [Citation.]' [Citation.] 'Assertions that are "merely incidental" or "collateral" are not subject to section 425.16. [Citations.] Allegations of protected activity that merely provide context, without supporting a claim for recovery, cannot be stricken under the anti-SLAPP statute.' [Citation.] [¶] While a breach of the implied covenant of good faith and fair dealing may be carried out by means of communications between the parties' respective counsel, the fact of counsel's communications does not transform the claim to one arising from protected activity within the meaning of section 425.16. The allegations of counsel's communications do not concern the substantive[] issue of the [plaintiffs]' liability as alleged in the . . . counterclaim or any coverage matter. Instead, the communications concern procedural matters regarding 'discovery,' 'correspondence with [the insurance company's] claims handlers,' and 'payments' to the [plaintiffs], directly related to [the insurance company]'s duty to defend obligations owed to the [plaintiffs] by appointing panel counsel to represent them in defending the . . . counterclaim." (*Miller, supra,* 41 Cal.App.5th at pp. 257-258.)

14

The *Miller* court further stated:  "Thus, '[w]hat gives rise to liability' is not the fact of counsel's communications, but that [the insurance company] allegedly denied the [plaintiffs] the 'benefit' of panel counsel's independent professional judgment in rendering legal services to them.  [Citations.]  Consequently, we reject [the insurance company]'s argument that the allegations of counsel's communications give rise to its liability for an action for breach of the implied covenant of good faith and fair dealing.  '"[T]he lawsuit concerns a breach of duty that does not depend on [the insurance company's] exercise of a constitutional right."'  [Citation.]  In other words, and contrary to [the insurance company]'s contention, the allegations of counsel's communications are only evidence that provides the context for the allegation that [the insurance company] unreasonably and without proper cause interfered with panel counsel's representation of the [plaintiffs] in defending against the . . . counterclaim."  (*Miller, supra,* 41 Cal.App.5th at pp. 258-259.)

Similarly, in the instant case, references to settlement and other potentially protected activity in the allegations challenged by Navigators in the anti-SLAPP motion reflect evidence that provides context for the allegation Navigators failed to perform under the terms of the polices.  Such references do not establish that Trilogy's action arises out of any protected activity.

*Seltzer v. Barnes* (2010) 182 Cal.App.4th 953 (*Seltzer*), upon which Navigators heavily relies, does not support a different conclusion.  In *Seltzer*, the plaintiff filed a complaint against her homeowners association which in turn filed a cross-complaint against her.  (*Id.* at p. 958.)  The plaintiff tendered the cross-complaint to Allstate, her insurer under a homeowners policy.  (*Ibid.*)  Allstate hired an attorney to defend the plaintiff on the cross-complaint, subject to a reservation of rights; Allstate took the position that some of the claims against the plaintiff were not covered by her policy.  (*Id.* at pp. 958-959.)  After the defendant attorney, in his representation of Allstate, secretly negotiated a settlement of the covered claims by the homeowners

15

association against the plaintiff, the plaintiff brought an action against the defendant attorney, alleging he had colluded with the homeowners association's attorney to dismiss covered claims and convert the proceeds of the policies to the association. (*Id.* at p. 959.)

The plaintiff in *Seltzer* conceded that the defendant attorney's participation in settlement negotiations would constitute protected activity under section 425.16 but argued that the settlement negotiations in her case were not protected because they were illegal and in violation of various statutes. (*Seltzer, supra,* 182 Cal.App.4th at pp. 964-966.) The appellate court in *Seltzer* concluded that since the legitimacy of the defendant attorney's conduct was in dispute, the court could not find as a matter of law that his conduct was illegal and therefore unprotected by the anti-SLAPP statute. (*Id.* at pp. 964-965.)

As stated by the appellate court in *Coretronic, supra,* 192 Cal.App.4th at page 1391, "*Seltzer* does not establish that in cases involving attorneys and court proceedings, a plaintiff opposing an anti-SLAPP motion must offer evidence that the defendant's conduct was unethical or illegal and therefore not constitutionally protected. Rather, *Seltzer* establishes that, where the plaintiff *acknowledges* the challenged conduct arises from protected speech or petitioning activity, then the defendant's acts fall under the first prong of the anti-SLAPP statute unless the defendant concedes, or the evidence conclusively establishes, the challenged activity was illegal as a matter of law."

In *Seltzer, supra,* 182 Cal.App.4th at pages 967 through 969, the appellate court distinguished other cases involving litigation-related conduct that was unprotected by the anti-SLAPP statute. (See, e.g., *Freeman v. Shack* (2007) 154 Cal.App.4th 719, 722 [the plaintiffs clients' lawsuit against former attorney did not arise from the filing or settlement of litigation but the attorney's "undertaking to represent a party with interests adverse to plaintiffs, in violation of the duty of loyalty he assertedly owed them"].) The *Seltzer* court noted: "In the present case, [the defendant attorney] represented Allstate, not [the plaintiff], and [the plaintiff]'s causes of action do arise from [the defendant

16

attorney's] conduct in negotiating a settlement with the Association, *rather than the fact of his representation of Allstate*." (*Seltzer, supra,* 182 Cal.App.4th at p. 968, italics added.)

The *Coretronic* court also distinguished *Seltzer* from the case before it: "Unlike the plaintiff in *Seltzer*, plaintiffs here deny their claims arise from protected speech or petitioning activity. The complaint alleges defendants [attorneys] obtained plaintiffs' records, which had strategic and financial value to . . . plaintiffs' adversary, under misleading circumstances. . . . That the concealment occurred in the context of litigation does not change this result, as it is clear that any litigation activity is only incidental to plaintiffs' allegations of wrongdoing. *Seltzer* is inapposite and does not support the proposition that plaintiffs had to make an evidentiary showing that defendants owed them an ethical duty in order to defeat the anti-SLAPP motion." (*Coretronic, supra,* 192 Cal.App.4th at p. 1391.)

As in *Miller*, and unlike *Seltzer*, Trilogy did not sue any attorney for settling any dispute; the amended complaint does not challenge any attorney's conduct in litigating any claim. Instead, Trilogy alleged Navigators failed to perform under the terms of the policies by, inter alia, retaining conflicted counsel, failing to pay amounts owed, and misleading Trilogy regarding obligations under the policies. That the conduct underlying Trilogy's claims is *related* to pending litigation is insufficient to confer protected activity status under section 425.16, subdivision (e)(2). After *Seltzer* was decided, the California Supreme Court confirmed that conduct must *arise* from the litigation to be protected under the anti-SLAPP statute. (See, e.g. *Rand, supra,* 6 Cal.5th 610.) The amended complaint does not describe or rely on any issues under consideration or review by a judicial body in support of its claims.

The trial court therefore properly concluded that while the allegations of the amended complaint that were the object of the anti-SLAPP motion have some connection to litigation, they do not reflect a claim that arises out of a written or oral statement or

17

writing made in connection with an issue under consideration or review in any such litigation. Navigators thus failed to show the conduct described by the challenged allegations of the amended complaint constitute protected activity within the meaning of section 425.16, subdivision (e)(2). We therefore do not reach the second prong of the anti-SLAPP analysis.

## DISPOSITION

The order denying that anti-SLAPP motion is affirmed. Respondent shall recover costs on appeal.


FYBEL, J.

WE CONCUR:


O'LEARY, P. J.


MOORE, J.

18

Filed 6/18/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| TRILOGY PLUMBING, INC., | |
| Plaintiff and Respondent, | G057796 |
| v. | (Super. Ct. No. 30-2017-00929323) |
| NAVIGATORS SPECIALITY INSURANCE COMPANY, | ORDER CERTIFYING OPINION FOR PUBLICATION |
| Defendant and Appellant. | |

Respondent has requested that our opinion filed on May 27, 2020, be certified for publication. It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c)(2), (4), (6), and (7). The request is GRANTED. The opinion is ordered published in the Official Reports.


FYBEL, J.

WE CONCUR:


O'LEARY, P. J.


MOORE, J.