IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 9, 2024 Session

## ALICE CARTWRIGHT GARNER, ET AL. V. THOMASON, HENDRIX, HARVEY, JOHNSON & MITCHELL, PLLC, ET AL.

**Appeal from the Circuit Court for Shelby County**
No. CT-3564-19    Robert E. Lee Davies, Senior Judge

———————————————————

**No. W2022-01636-COA-R3-CV**

———————————————————

In this case, the plaintiffs sued the former attorneys of her opponent in a multitude of unsuccessful actions involving family trusts. In their complaint, the plaintiffs argued that they were damaged by the tortious conduct of the attorneys under the tort of another doctrine. The defendant-attorneys filed a petition to dismiss under the Tennessee Public Protection Act. The trial court denied the motion to dismiss on the basis that the act was inapplicable. We reverse and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

J. STEVEN STAFFORD, J., delivered the opinion of the court, in which KENNY ARMSTRONG and CARMA DENNIS MCGEE, JJ., joined.

Lucian T. Pera, J. Bennett Fox, Jr., and John D. Woods, III, Memphis, Tennessee, for the appellants, Justin Edward Mitchell, Mitchell Law Firm, LLC, Jerry Edward Mitchell, Thomason Hendrix, P.C., Thomason, Hendrix, Harvey, Johnson & Mitchell, PLLC, and Lewis, Thomason, King, Krieg & Waldrop, PC (Memphis).

David Wade, Memphis and Andrew Gardella, Nashville, Tennessee, for the appellees, Alice Garner Cartwright, Alan L. Garner, Jackson Capital Partners, Limited Partnership, and Jackson Capital Management, LLC.

**OPINION**

# I.     FACTUAL AND PROCEDURAL BACKGROUND

Over a period of more than ten years, the beneficiary of certain family trusts filed a total of seven lawsuits concerning their administration against his sister, as trustee, and others. This is at least the sixth in a series of appeals involving these parties. *See Cartwright v. Jackson Cap.* (*Cartwright I*), No. W2011-00570-COA-R3-CV, 2012 WL 1997803 (Tenn. Ct. App. June 5, 2012); *Cartwright v. Garner*, 751 F.3d 752 (6th Cir. 2014) [hereinafter "the federal lawsuit"]; *Cartwright v. Jackson Cap.* (*Cartwright II*), 478 S.W.3d 596 (Tenn. Ct. App. 2015); *Cartwright v. Garner* (*Cartwright III*), No. W2016-01423-COA-R3-CV, 2018 WL 3814632 (Tenn. Ct. App. August 10, 2018); *Cartwright v. Garner* (*Cartwright IV*), No. W2016-01424-COA-R3-CV, 2018 WL 4492742 (Tenn. Ct. App. Sept. 19, 2018).[1] Together, we refer to these lawsuits as the "Trust Lawsuits."[2] Having failed to exhaust their fighting spirit in the prior cases against one another, the siblings each filed an action against the attorneys who have represented the brother in the Trust Lawsuits. This appeal involves the claim of the non-client sister against her brother's attorneys. A seventh appeal in which the brother sued his own attorneys is also pending before this Court.[3]

The genesis of this appeal involved a dispute between siblings Alan Cartwright and Plaintiff/Appellee Alice C. Garner over the administration of various trusts by Mrs. Garner and her husband, Plaintiff/Appellee Alan Garner (together with Mrs. Garner, "the Garners").[4] After over a decade of litigation in which the Garners prevailed at essentially every turn, on August 12, 2019, the Garners[5] filed a complaint in the Shelby County Circuit Court ("the trial court") for damages against Mr. Cartwright's former attorneys, Jerry E. Mitchell[6] and Justin E. Mitchell, their former law firm,[7] and Justin Mitchell's current law firm, Mitchell Law Firm, LLC (collectively, "Appellants").

---

[1] Not all of the lawsuits resulted in appeals.

[2] More details concerning the Trust Lawsuits can be found by reviewing the listed Opinions.

[3] *See Cartwright v. Thomason Hendrix, P.C., et al.*, No. W2022-01627-COA-R3-CV. By order of March 2, 2023, the two appeals were consolidated only such that oral argument was held on the same docket before the same panel. An Opinion reversing the trial court in the companion case is being filed contemporaneously with this Opinion.

[4] Because of the procedural posture of this appeal, we take the facts from the complaint.

[5] The complaint was also filed in the name of Plaintiffs/Appellees Jackson Capital Partners, L.P. ("JCP") and Jackson Capital Management, LLC. We use "the Garners" to signify all of the Plaintiffs/Appellees for clarity.

[6] After the complaint was filed, Jerry Mitchell died. His son was appointed as his personal representative and was substituted as a party.

[7] According to the complaint, the former law firm went through a series of name changes and mergers. The named parties to the complaint were Thomason, Hendrix, Harvey, Johnson & Mitchell, PLLC; Thomason Hendrix, P.C.; and Lewis, Thomason, King, Krieg & Waldrop, P.C. The complaint noted that the claims against the law firms related only to their vicarious liability for the tortious conduct of Jerry and Justin Mitchell.

The complaint alleged that in 2005, Jerry Mitchell agreed to represent Mr. Cartwright in a lawsuit filed by Mr. Cartwright's mother, Betty Goff Cartwright. The attorney contract provided that Jerry Mitchell would be entitled to a contingency fee of "33 1/3% of the gross proceeds received or recovered on behalf of [Mr.] Cartwright." The lawsuit named Mr. Cartwright, Mrs. Garner, and other persons as defendants and sought to dismantle some of the financial planning that had been put into place by Mrs. Cartwright's late husband. In the course of this representation, Mr. Cartwright, by and through Mr. Mitchell, filed a cross-claim against the other defendants, essentially joining in his mother's claims. Mrs. Cartwright died while the matter was pending, and her claims were settled by her surviving spouse and dismissed. The cross-claim, however, remained pending, and would be supplemented by five additional lawsuits involving the trusts filed by Mr. Cartwright, by and through Jerry Mitchell and/or Justin Mitchell, over the next fourteen years.[8] During this time, Justin Mitchell, Jerry Mitchell's son, also worked on the matter. The damages sought in these lawsuits ballooned from $10 million to $120 million.

Each of the Trust Lawsuits was resolved in favor of the Garners and either affirmed on appeal or not appealed. In general, the courts held that the trust documents were valid, that the trustees had followed the trust documents, and Mr. Cartwright had received all of the distributions to which he was entitled.[9] In many of the cases, the Garners were awarded substantial attorney's fees. *See Cartwright II*, 478 S.W.3d at 628 (following a remand in *Cartwright I*, affirming summary judgment in favor of the Garners, resulting in the dismissal of all claims by Mr. Cartwright, and affirming the trial court's award of attorney's fees); *Cartwright III*, 2018 WL 3814632, at *3 (affirming the dismissal of Mr. Cartwright's complaint and awarding attorney's fees against him personally); *Cartwright IV*, 2018 WL 4492742, at *9 (same). According to the Garners, there was no reasonable basis for the filing of any lawsuits after the federal lawsuit in which Jerry Mitchell acknowledged that further lawsuits would be procedurally barred.

The complaint further alleged that Mr. Cartwright was an unknowing participant in this scheme by Appellants.[10] Specifically, the Garners alleged that Mr. Cartwright did not understand the litigation or that judgments had been entered against him. The complaint further alleged that Jerry Mitchell made false statements to Mr. Cartwright and refused to allow Mr. Cartwright to communicate with Mrs. Garner. The siblings were finally able to communicate in August 2015; according to the complaint, however, the Garners only learned the full extent of Appellants' allegedly tortious conduct in late 2018 and early 2019.

---

[8] The Garners alleged that Appellants were involved in another lawsuit by "ghost" writing a complaint for Mr. Cartwright. According to the instant complaint, that lawsuit is still pending, but Appellants do not represent Mr. Cartwright.

[9] In fact, Mr. Cartwright had received over $1.3 million more than what he was entitled to receive under the trust documents as written.

[10] As previously discussed, Mr. Cartwright filed a companion case against Appellants alleging that he was also damaged by Appellants' tortious conduct. *See Cartwright v. Thomason Hendrix, P.C., et al.*, No. W2022-01627-COA-R3-CV.

In particular, the Garners alleged that Mr. Cartwright was shocked by the judgments against him in *Cartwright III* and *Cartwright IV*.

According to the complaint, Jerry and Justin Mitchell's false statements were intended to persuade Mr. Cartwright "to continue to perpetuate meritless litigation for their own gain with the apparent hope that one of the lawsuits would eventually pay-off in the form of a contingency-fee award[.]" The Garners also alleged that Jerry Mitchell pressed Mr. Cartwright to continue the Trust Lawsuits through veiled threats. As the complaint stated, "Jerry Mitchell's and Justin Mitchell's continued pursuit of repetitive lawsuits on behalf of [Mr.] Cartwright seeking a multi-million dollar settlement was motivated by their own, personal, financial gain . . . and not in the best interests of their own client."

In pursuing these allegedly meritless lawsuits, Appellants depleted the assets at issue and resulted in significant costs and expenses. As the complaint explained,

> [The Garners] bring this lawsuit to recover damages against Jerry Mitchell and Justin Mitchell, and the other law firm defendants, including without limitation for (i) the depletion and waste of assets of JCP and its limited partners, (ii) the fees, costs and expenses paid to their legal counsel to protect their interests and the Trust structures established by the Cartwright family by defending against the prior lawsuits that [Appellants] filed on behalf of [Mr.] Cartwright, (iii) for loss of time, cost and expenses in defending against the lawsuits, (iv) for the legal fees, costs and expenses incurred in prosecuting this lawsuit, and (v) the loss of time, costs and expenses in prosecuting this lawsuit. All of these damages are a direct and proximate cause of [Appellants'] tortious conduct in representing [Mr.] Cartwright and their pursuit of objectively unreasonable litigation on behalf of [Mr.] Cartwright over the years, which was perpetuated by (a) their tortious concealment and failure to inform [Mr.] Cartwright, while under a duty to make such disclosures to him, of the actual results of the various lawsuits, thereby inducing him through false pretense and hopes of a financial windfall to continue to pursue meritless litigation, (b) their failure and/or refusal to explain to [Mr.] Cartwright, while under a duty to make such disclosures to him, or their failure to explain to him in terms that he could understand, the adverse rulings and judgments entered against him in the lawsuits, and (c) their use of veiled threats to dissuade [Mr.] Cartwright from terminating the lawsuits to his own detriment.

Thus, the Garners alleged that they incurred expenses acting in protection of their interests in the prior "meritless lawsuits filed and pursued by [Mr.] Cartwright through his counsel [i.e., Appellants]."

Appellants filed a motion to dismiss on December 2, 2019, arguing that the

complaint failed to state a claim upon which relief could be granted and that it was barred by the applicable statute of limitations. On May 31, 2022, the Garners then amended their complaint to delete one claim and to add additional facts relating to the discovery of the alleged torts.[11]

On July 1, 2022, Appellants filed a second motion to dismiss, raising generally the same arguments as their prior motion. On the same day, Appellants also filed a petition to dismiss the Garners' complaint on the basis of Tennessee's Anti-SLAPP statute,[12] the Tennessee Public Participation Act ("TPPA"). Therein, Appellants argued that the complaint against them was filed in response to and was based on Appellants' exercise of their constitutional right to petition, which was protected by the TPPA. The petition further noted that the Garners had sought sanctions in the underlying lawsuits, which requests had been denied or were still pending.[13] Appellants asserted that the proper venue for these claims was therefore within the underlying allegedly frivolous lawsuits at issue. Thus, Appellants asserted that under the TPPA, the burden shifted to the Garners to establish a prima facie case—a burden that the Garners could not meet due to the expiration of the statute of limitations and the fact that the Garners' tort of another claim failed as a matter of law.

The Garners filed responses in opposition to the motion to dismiss and petition to dismiss on August 1, 2022. The Garners argued, inter alia, that the TPPA was simply not implicated in this case because the torts alleged were unrelated to the right to petition, but instead related to the representation of Mr. Cartwright. The Garners further argued that because Appellants were not named parties in the prior lawsuits, they have no standing under the TPPA. In the Garners' view, only Mr. Cartwright would have standing to raise a TPPA defense. The Garners further asserted that the constitution does not protect frivolous lawsuits. Finally, the Garners asserted that even if the burden shifted to them, they could make out a prima facie case against Appellants.

After each party filed additional responses, the trial court entered an order on October 21, 2022, denying the petition to dismiss under the TPPA. Therein, the trial court characterized the Garners' claims as follows:

[11] There is no functional difference in the two complaints for purposes of this appeal, so we simply refer to "the complaint" in this Opinion. When specifically quoting from the complaint, however, we quote from the amended complaint as it is the operative complaint in this case.

[12] "The term 'SLAPP' stands for 'strategic lawsuits against public participation,' meaning lawsuits which might be viewed as 'discouraging the exercise of constitutional rights, often intended to silence speech in opposition to monied interests rather than to vindicate a plaintiff's right.'" ***Nandigam Neurology, PLC v. Beavers***, 639 S.W.3d 651, 657 (Tenn. Ct. App. 2021) (quoting Todd Hambidge et al., *Speak Up. Tennessee's New Anti-SLAPP Statute Provides Extra Protections to Constitutional Rights*, 55 Tenn. B.J., September 2019, at 14, 14, 15).

[13] Specifically, the trial court entered an order on July 18, 2018, denying sanctions in ***Cartwright IV*** and ***Cartwright V***. On November 22, 2019, however, the trial court set aside the July 18 order due to a possible conflict of the prior trial judge. As such, the Rule 11 sanctions appear to be unresolved at this time.

- 5 -

- [Appellants] failed and/or neglected to disclose the actual results of the various lawsuits that they filed on [Mr.] Cartwright's behalf, telling [Mr.] Cartwright throughout the years that he was winning the lawsuits and encouraging him to continue to pursue the litigation, when in fact he was not winning and the courts continued to dismiss his lawsuits.
- [Appellants] had persuaded [Mr.] Cartwright, through promises of multi-million-dollar financial win falls, to continue to perpetrate meritless litigation for their own gain with the apparent hope that one of the lawsuits would eventually pay off in the form of a contingency-fee award.
- [Appellants] had pressured [Mr.] Cartwright, in response to his inquiring whether he could end the lawsuits, telling him that if he did so, he would immediately owe hundreds of thousands of dollars to the Mitchells' law firm for expenses they had advanced during the course of the lawsuits.
- [Appellants] continued pursuit of repetitive lawsuits on behalf [Mr.] Cartwright seeking a multi-million-dollar settlement was motivated by their own, personal, financial gain to recover the expenses they had advanced in the case, and to reap a contingency fee win fall for themselves and not in the best interest of [Mr.] Cartwright as their client.

The trial court then framed the threshold question under the TPPA as "whether [Appellants] were exercising their right to petition in the underlying lawsuits, thereby providing them with the protection afforded by the Tennessee Anti-SLAPP statute." After citing law from California and Texas,[14] the trial court ruled that "a lawsuit by a non-client alleging causes of action against an attorney in representing the attorney's client in the underlying litigation generally will fall within the protection of that state's Anti-SLAPP statute which satisfies the first prong of the statute." But the trial court found that an "exception to the general rule" must exist when the plaintiff argues that he or she was "injured by the intentional malpractice of [the defendant attorneys], who breached their fiduciary duty to their client for their own personal gain in filing these multiple frivolous lawsuits." So the trial court found that the petition to dismiss should be denied, but denied the Garners' claim for attorney's fees. This appeal as of right followed. *See* Tenn. Code Ann. § 20-17-106 ("The court's order dismissing or refusing to dismiss a legal action pursuant to a petition filed under this chapter is immediately appealable as a matter of right to the court of appeals.").

## II.   ISSUES PRESENTED

---

[14] *See **Loanvest I, LLC v. Utrecht**, 235 Cal. App. 4th 496, 501, 185 Cal. Rptr. 3d 385, 390 (Cal. Ct. App. 2015); **PrediWave Corp. v. Simpson Thacher & Bartlett, LLP**, 179 Cal. App. 4th 1204, 1227, 102 Cal. Rptr. 3d 245, 263 (Cal. Ct. App. 2009); **Youngkin v. Hines**, 546 S.W.3d 676 (Tex. 2018).

Appellants raise the following issues, which are taken from their brief:

1. Whether the trial court erred in concluding that [Appellants'] conduct is not protected by the Tennessee Public Participation Act.
2. Whether the litigation privilege is a complete defense to [the Garners'] cause of action.

In response, the Garners assert that the trial court's denial of the petition to dismiss should be affirmed. In the event that Appellants prevail on that issue, however, the Garners assert that this Court should remand to the trial court for consideration of whether they met their burden under the second prong of the TPPA's burden-shifting analysis. The Garners also assert, in the alternative, that any defense under the litigation privilege was waived.

### III. STANDARD OF REVIEW

The appeal involves the denial of a petition to dismiss under the TPPA. In a typical case, the denial of a motion to dismiss presents an issue of law, which we review de novo with no presumption of correctness. *Ultsch v. HTI Mem'l Hosp. Corp.*, 674 S.W.3d 851, 860 (Tenn. 2023). In our review, we accept the factual allegations of the complaint as true. *Id.* To the extent that this case also requires that we construe the TPPA, our review is similarly de novo with no presumption of correctness. *Nandigam Neurology, PLC*, 639 S.W.3d at 657. As we have explained,

> The polestar of statutory interpretation is the intent and purpose of the legislature in enacting the statute. We begin by reading the words of the statutes using their plain and ordinary meaning in the context in which the words appear. When the language is clear and unambiguous, we look no further than the language of the statute itself to determine its meaning.

*Id.* (internal citations and quotation marks omitted) (citing *Nationwide Mut. Fire Ins. Co. v. Memphis Light, Gas & Water*, 578 S.W.3d 26, 30 (Tenn. Ct. App. 2018)).[15]

### IV. ANALYSIS

In this appeal, we must determine whether the trial court erred in denying Appellants' petition to dismiss the complaint on the basis of the TPPA. The stated purpose of the TPPA is "to encourage and safeguard the constitutional rights of persons to petition, to speak freely, to associate freely, and to participate in government to the fullest extent permitted by law and, at the same time, protect the rights of persons to file meritorious

---

[15] At various points, the parties also characterize the issues in this case as involving standing. The question of whether a party has standing is also a question of law, which we likewise review de novo. *Massengale v. City of E. Ridge*, 399 S.W.3d 118, 123 (Tenn. Ct. App. 2012) (citing *Cox v. Shell Oil Co.*, 196 S.W.3d 747, 758 (Tenn. Ct. App. 2005)).

lawsuits for demonstrable injury." Tenn. Code Ann. § 20-17-102.[16]

The TPPA provides that "[i]f a legal action is filed in response to a party's exercise of the right of free speech, right to petition, or right of association, that party may petition the court to dismiss the legal action." Tenn. Code Ann. § 20-17-104(a). This case involves only the right to petition. The exercise of the right to petition is defined as follows:

> "Exercise of the right to petition" means a communication that falls within the protection of the United States Constitution or the Tennessee Constitution and:
>
> > (A) Is intended to encourage consideration or review of an issue by a federal, state, or local legislative, executive, judicial, or other governmental body; or
> > (B) Is intended to enlist public participation in an effort to effect consideration of an issue by a federal, state, or local legislative, executive, judicial, or other governmental body . . . .

Tenn. Code Ann. § 20-17-103(4).

If the petitioning party meets their burden to "make a prima facie case that a legal action against the petitioning party is based on, relates to, or is in response to that party's exercise of the . . . right to petition," then "the court shall dismiss the legal action unless the responding party establishes a prima facie case for each essential element of the claim in the legal action." Tenn. Code Ann. § 20-17-105(a), (b). Additionally, "the court shall dismiss the legal action if the petitioning party establishes a valid defense to the claims in the legal action." Tenn. Code Ann. § 20-17-105(c). When considering a petition filed under the TPPA, the court may consider "supporting and opposing sworn affidavits stating admissible evidence upon which the liability or defense is based and on other admissible evidence presented by the parties." Tenn. Code Ann. § 20-17-105(d). If an action is dismissed based on a TPPA petition, the court "shall award to the petitioning party . . . [c]ourt costs, reasonable attorney's fees, discretionary costs, and other expenses" and other relief "necessary to deter repetition of the conduct by the party who brought the legal action or by others similarly situated." Tenn. Code Ann. § 20-17-107(a). If, however, the court

---

[16] The Garners assert that Appellants cannot meet this purpose because they were not "meritorious" in the Trust Lawsuits. Assuming arguendo that this language provides any mandates governing this issue rather than the more specific statutory provisions set forth below, we note that the Garners misapprehend the language of section 20-17-102. This provision provides that the purpose of the statute is to protect the constitutional free speech, free association, and free petition rights of persons, while also protecting the rights of persons to file meritorious actions. Thus, this portion of the statute explains that the intent is to balance the rights of *defendants* to exercise their constitutional rights with the rights of *plaintiffs* to file meritorious actions against them. In other words, the second portion of the sentence does not equate to a requirement that a defendant only has a right to petition so long as he or she is meritorious.

finds that the petition was frivolous or filed solely for purposes of delay, the court may award costs and reasonable attorney's fees to the party opposing the TPPA petition. Tenn. Code Ann. § 20-17-107(b).

In this case, Appellants filed a petition for dismissal under the TPPA, arguing that the Garners' complaint falls within the purview of the TPPA and should be dismissed. In support of their contention that the trial court erred in dismissing their petition, Appellants note that the TPPA should be construed broadly and that their actions in filing lawsuits on behalf of their client should be protected by the TPPA. *See* Tenn. Code Ann. § 20-17-102 ("This chapter . . . shall be construed broadly to effectuate its purposes and intent."). Moreover, they note that the central focus of the Garners' complaint is the six prior lawsuits filed by Mr. Cartwright by and through Appellants, the defense of which the Garners contend caused them damages. So then, Appellants assert that the Garners' lawsuit is a legal action "based on, relate[d] to, or [] in response to" Appellants' communications seeking review of an issue by a state judicial body. Tenn. Code Ann. §§ 20-17-105(a), -103(4). Appellants therefore assert that they met their burden to make a prima facie case that the TPPA is applicable and that the burden then shifted to the Garners to establish a prima facie case for their cause of action. Tenn. Code Ann. § 20-17-105(b).

In response, the Garners raise several arguments in an effort to establish that the TPPA is not applicable here.[17] The Garners first assert that their lawsuit is not governed by the TPPA because it is not based on, related to, or in response to the lawsuits filed by Mr. Cartwright by and through Appellants. This argument is easily dispensed with. While the Garners couch their cause of action under the "tort of another" doctrine,[18] "the plaintiff's

---

[17] In addition to their statutory arguments, the Garners also argue that Appellants' TPPA petition should have been dismissed because it was untimely. Tennessee Code Annotated section 20-17-104(b) provides that a TPPA petition "may be filed within sixty (60) calendar days from the date of service of the legal action or, in the court's discretion, at any later time that the court deems proper." The Garners assert that Appellants' petition was untimely, as it was filed nearly three years after service of process on the initial complaint. But the TPPA petition was filed within sixty calendar days of the filing of the amended complaint. The trial court did not specifically rule on this argument in its order, suggesting that the trial court exercised its discretion to allow the TPPA petition under these circumstances. The Garners have not shown that the trial court abused its discretion in that decision. Still, given the trial court's silence on this issue, the parties are not foreclosed from re-litigating this issue upon remand.

[18] The tort of another doctrine provides as follows:

> One who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover reasonable compensation for loss of time, attorney fees and other expenditures thereby suffered or incurred in the earlier action.

*Whitelaw v. Brooks*, 138 S.W.3d 890, 893 (Tenn. Ct. App. 2003) (quoting *Pullman Standard, Inc. v. Abex Corp.*, 693 S.W.2d 336, 340 (Tenn. 1985)). This doctrine is utilized to avoid the American Rule, which generally provides that parties must pay their own attorney's fees, absent a contract, statute, or other recognized circumstance. *HCTec Partners, LLC v. Crawford*, 676 S.W.3d 619, 644 (Tenn. Ct. App. 2022).

choice of what cause of action to plead matters little" in determining whether the TPPA applies. ***Nandigam Neurology***, 639 S.W.3d at 658 (quoting ***Sandholm v. Kuecker***, 356 Ill. Dec. 733, 962 N.E.2d 418, 427 (Ill. 2012)).

Here, there can be no reasonable conclusion from reading the Garners' complaint other than that it was filed in response to, or at least, relates to, the filing of the Trust Lawsuits. *Relate*, *Webster's New World College Dictionary* (5th ed. 2014) (defining "relate" as, inter alia, "having to do with"). As previously discussed, the complaint details the multitude of Trust Lawsuits filed against the Garners, the Garners' success in defending each lawsuit, and the damages the Garners assert that they incurred "in defending against the lawsuits[.]" Moreover, the Garners allege that Appellants' tortious conduct involves Appellants' "pursuit of meritless litigation" against the Garners. In other words, the Garners allege that they were damaged by Appellants' participation in the filing of petitions against them. So then, we must conclude that the Garners' claim, at least, relates to a communication seeking review before a state government body as required by the TPPA. *See* Tenn. Code Ann. § 20-17-103(4).

Still, the Garners argue that the TPPA does not apply to Appellants because they did not "establish that they were a party to the prior Trust Lawsuits." Because Appellants were not parties to any of the prior seven lawsuits involving the trusts, the Garners argue that they lack standing under the TPPA. We agree that there can be no dispute that Appellants were not parties to any of the prior litigation. We disagree, however, that the language of the TPPA includes that requirement.

In relevant part, the TPPA provides that petitioning parties, in this case Appellants, meet their burden as to the first prong of the TPPA by making a prima facie case that "a legal action against the petitioning party is based on, relates to, or is in response to *that party's* exercise of the right of free speech, right to petition, or right of association[.]" Tenn. Code Ann. § 20-17-105(a) (emphasis added). Nothing in the above language requires a prior lawsuit to which the petitioning party was also a party. All that is required is that the petitioning party be a party to the instant action—a requirement that Appellants clearly meet. Indeed, it would defy logic to impose a prior lawsuit burden on the "that party[]" requirement, as this language applies not only to the right to petition, but also the right of free speech and the right of association. *See* Tenn. Code Ann. § 20-17-105(a). These rights, of course, do not always implicate litigation. And indeed, the right to petition does not necessarily implicate court action, as it also applies to other types of applications for review before other government bodies. So then, we conclude that this argument lacks merit.

The Garners make a similar argument that their complaint is not based on, related to, or in response to Appellants' exercise of the right to petition because only Mr. Cartwright was petitioning in the underlying litigation. In the Garners' view, only Mr. Cartwright was exercising his right to petition, and therefore, Appellants had no petitioning activity to protect. As the trial court noted, however, courts that have considered this issue

have held that attorneys acting on behalf of clients are exercising the right to petition. As the trial court explained

> The California and Texas courts appear to agree that a lawsuit by a non-client alleging causes of action against an attorney in representing the attorney's client in the underlying litigation generally will fall within the protection of that state's Anti-SLAPP statute[,] which satisfies the first prong of the statute. This general rule regarding non-clients suing an attorney would also apply [] to the TPPA.

In support, the trial court cited *Youngkin v. Hines*, 546 S.W. 3d 676 (Tex. 2018),[19] and *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*, 133 Cal. App. 4th 658, 35 Cal. Rptr. 3d 31 (Cal. Ct. App. 2005).[20]

On appeal, the Garners cite no law in which a court anywhere in the United States has come to an opposite conclusion, either within the context of an anti-SLAPP statute or otherwise,[21] nor do they argue that the Texas and California courts reached the wrong conclusion based on constitutional jurisprudence.[22] Rather, they merely argue that this case

---

[19] In *Youngkin*, the Texas Supreme Court held that the Texas anti-SLAPP statute applied to a claim by a non-client against an attorney related to the attorney's action in dictating an agreement into the court record during a trial. *Id.* at 681. In reaching this result, the court specifically rejected the non-client's argument that the attorney was required to show that he was exercising his "personal First Amendment rights" as an "attempt to add a requirement to the statute that does not exist in its text." *Id.* at 680–81.

[20] In *Peregrine Funding*, the California Court of Appeals held that California's anti-SLAPP statute applied to claims against an attorney surrounding the attorney's efforts to oppose Securities and Exchange Commission restraining orders. *Id.* at 671. *But see* ***PrediWave Corp.***, 179 Cal. App. 4th at 1228, 102 Cal. Rptr. 3d at 263 (disagreeing with *Peregrine Funding* to the extent that it allowed an anti-SLAPP action by a client against its own attorney, but agreeing that the California anti-SLAPP statute "protect[s] qualifying statements made or conduct undertaken by a person on another person's behalf against a cause of action by a third person").

[21] *But see, e.g.*, ***Jacoby & Meyers, LLP v. Presiding Justs. of the First, Second, Third & Fourth Dep'ts, App. Div. of the Sup. Ct. of N.Y.***, 852 F.3d 178, 187 (2d Cir. 2017) (holding, in the context of a challenge to a rule prohibiting non-lawyer investment in law practices, that the line of cases cited "do not establish that an *attorney* is entitled to access the court on a client's behalf, at least not under the First Amendment rights to petition or association"). Still courts have held that, even applying this rule, "[w]hen the lawyers' own expressive interests align with [a client's First Amendment] rights, the lawyers themselves may have a cognizable First Amendment interest in pursuing the litigation." ***Powers v. Cnty. of Suffolk***, No. CV 15-5116, 2017 WL 2465168, at *2 (E.D.N.Y. June 6, 2017) (citing ***Jacoby & Meyers***, 852 F.3d at 187). Of course, in this case, the Garners allege that it is Appellants' own interests that led them to pursue the allegedly frivolous litigation against the Garners, with Mr. Cartwright as essentially an unknowing patsy to their scheme. So then, the allegations of this particular case appear to meet even this heightened requirement.

[22] In fact, they insist that Appellants, having relied on the California and Texas precedent in the trial court, should not be able to avoid the application of those precedents in this appeal and have waived any argument otherwise. As discussed *infra*, however, the trial court ruled that despite the general rule expressed in these opinions, a different rule would be applicable to this case. We do not find waiver in this

does not fall within the general rule due to the specific allegations raised in their complaint or the specific language of the TPPA, which we have addressed *supra*. As such, we accept as true for purposes of this appeal the trial court's conclusion that, in general, an attorney representing a client in court is exercising the constitutional right to petition. *See **Forbess v. Forbess***, 370 S.W.3d 347, 356 (Tenn. Ct. App. 2011) (holding that an appellee can waive an argument that it fails to properly raise when it is seeking affirmative relief from the trial court's ruling).

Although they object to any characterization of their arguments as exceptions to this general rule or the TPPA, the Garners next argue that certain considerations take this case out of the ambit of the general rule noted above. First, they emphasize that the filing of frivolous lawsuits is not protected by either the Tennessee or United States Constitutions. Thus, they assert that Appellants' actions did not meet the definition of an exercise of the right to petition under the TPPA because they do not "fall[] within the protection of the United States Constitution or the Tennessee Constitution[.]" Tenn. Code Ann. § 20-17-103(4) (defining the exercise of the right to petition).

It is true that the federal courts have generally held that frivolous lawsuits are not entitled to protection under the United States Constitution. *See **United States v. Cabrera***, 811 F.3d 801, 816 (6th Cir. 2016) (stating that there is "no constitutional right to file frivolous litigation" (quoting ***United States v. Miller***, 531 F.3d 340, 351 (6th Cir. 2008)); ***Wolfe v. George***, 486 F.3d 1120, 1125 (9th Cir. 2007) ("Just as false statements are not immunized by the First Amendment right to freedom of speech, . . . baseless litigation is not immunized by the First Amendment right to petition." (quoting ***Bill Johnson's Rests., Inc. v. N.L.R.B.***, 461 U.S. 731, 743, 103 S. Ct. 2161, 2170, 76 L. Ed. 2d 277 (1983))). Moreover, Appellants have not asserted that the Tennessee Constitution offers additional protections beyond the United States Constitution in this context. *Cf. **State v. Vaughn***, 29 S.W.3d 33, 39 (Tenn. Crim. App. 1998) ("Our Supreme Court has held that, in certain contexts. Article I, § 19 of the Tennessee Constitution is 'coextensive with the scope of the First Amendment to the U.S. Constitution.'" (quoting ***Davis-Kidd Booksellers, Inc. v. McWherter***, 866 S.W.2d 520, 525 (Tenn. 1993))).

We do not agree, however, that this allegation prevents application of the TPPA. In general, the burden is on the party asserting that a claim is frivolous. *See **Project Creation, Inc. v. Neal***, No. M1999-01272-COA-R3-CV, 2001 WL 950175, at *12 (Tenn. Ct. App. Aug. 21, 2001) (citing ***McGaugh v. Galbreath***, 996 S.W.2d 186, 194 (Tenn. Ct. App. 1998) (involving sanctions under Rule 11 of the Tennessee Rules of Civil Procedure)); *see also* 5 Am. Jur. 2d *Appellate Review* § 825; 20 C.J.S. *Costs* § 213; *cf.* ***Coppedge v. United States***, 369 U.S. 438, 447–48, 82 S. Ct. 917, 922, 8 L. Ed. 2d 21 (1962) ("Since our statutes and rules make an appeal in a criminal case a matter of right, the burden of showing that that right has been abused through the prosecution of frivolous litigation should, at all

---

circumstance.

- 12 -

times, be on the party making the suggestion of frivolity. It is not the burden of the petitioner to show that his appeal has merit, in the sense that he is bound, or even likely, to prevail ultimately."). And indeed, the Garners' attempts to be awarded sanctions under Rule 11 of the Tennessee Rules of Civil Procedure related to the alleged frivolity of the underlying actions have so far not been resolved in their favor. Thus, at this juncture no court has ever held that the claims in the underlying lawsuits were frivolous.[23]

Thus, the question of frivolity as it pertains to the Garners' cause of action is akin to the question of falsity in a defamation action. Again, like a frivolous claim, a false statement is generally not afforded constitutional protection. *See Bill Johnson's Rests.*, 461 U.S. at 743, 103 S. Ct. at 2170. But the burden to show the falsity of a statement is on the party asserting the defamation claim. *Wagner v. Fleming*, 139 S.W.3d 295, 302 (Tenn. Ct. App. 2004) (quoting *Pate v. Serv. Merch. Co.*, 959 S.W.2d 569, 573 (Tenn. Ct. App. 1996)). The fact that a plaintiff claims that a statement is false for purposes of defamation, however, does not defeat a defendant's assertion that the TPPA applies to such a claim. Indeed, if that were the case, no defendant could ever meet its burden under the first prong of the TPPA burden-shifting framework, as the TPPA likewise defines an "[e]xercise of the right of free speech" as "a communication made in connection with a matter of public concern or religious expression that falls within the protection of the United States Constitution or the Tennessee Constitution[.]" Tenn. Code Ann. § 20-17-103(3). Instead, this Court has held that a defendant has met his or her burden under the first prong of the TPPA despite the fact that the plaintiff's complaint necessarily alleges that the communication at issue was false, as that is the very nature of a defamation claim. *See Nandigam Neurology*, 639 S.W.3d at 668 (holding that "the communication at issue was an exercise of Defendant's right of free speech as that right is defined for purposes of the TPPA[,]" despite the plaintiff alleging that it was defamatory); *Doe v. Roe*, 638 S.W.3d 614, 620 (Tenn. Ct. App. 2021) (holding that the defendant's filing of a Title IX complaint was "an exercise of free speech that comes within the purview of the TPPA[,]" despite the plaintiff's allegation that it was defamatory).[24] Indeed, it would be fairly absurd to construe the TPPA as inapplicable to claims of defamation, as a defamation claim is a textbook example of a SLAPP. *See Nandigam Neurology*, 639 S.W.3d at 658 (noting that SLAPPs "include myriad causes of action, including defamation" (quoting *Sandholm*, 962 N.E.2d

---

[23] Specifically, on July 18, 2018, the trial court in *Cartwright IV* and *Cartwright V* found that Appellants had not engaged in sanctionable conduct and that, in general, Appellants' actions were "objectively reasonable" under the circumstances. This order, however, was later set aside and proceedings on the Garners' request for sanctions are ongoing. The Garners have also previously asked this Court to award them attorney's fees incurred in defending against a frivolous appeal. Twice we have awarded fees, but under a different statute in which frivolity is not required. Once we denied the request for fees altogether. *See Cartwright II*, 478 S.W.3d at 628 (denying the Garner's request for frivolous appeal attorney's fees); *Cartwright III*, 2018 WL 3814632, at *3 (awarding fees under Tenn. Code Ann. § 35-15-1004(a)); *Cartwright IV*, 2018 WL 4492742, at *9 (same).

[24] In *Doe*, this Court also specifically rejected the plaintiff's argument that the defendant had to establish that she made a "truthful statement" for purposes of her right to petition claim, as nothing in the TPPA contained such a requirement. *Id.* at 622–23.

- 13 -

at 427)); *see also **Yebuah v. Ctr. for Urological Treatment, PLC***, 624 S.W.3d 481, 486 (Tenn. 2021) ("In construing statutes, Tennessee law provides that courts are to avoid a construction that leads to absurd results."). Thus, the truth or falsity of an allegedly defamatory statement need not be addressed in the first prong of the TPPA framework, but rather in the second prong, where the burden rests on the plaintiff. *Cf. **Pragnell v. Franklin***, No. E2022-00524-COA-R3-CV, 2023 WL 2985261, at *11 (Tenn. Ct. App. Apr. 18, 2023) (considering the falsity of the statements relative to whether the plaintiffs met their burden to prove defamation, including that "the statements were false and made with knowledge of their falsity"). Because the burden is likewise on the Garners to prove the frivolity of the prior lawsuits, this question is also properly addressed under the second prong of the TPPA analysis.

We also note that courts who have addressed similar issues have come to similar conclusions. For example, in ***Seltzer v. Barnes***, the plaintiff sued, among others, an attorney who had represented an opposing party during settlement negotiations. 182 Cal. App. 4th 953, 958–59, 106 Cal. Rptr. 3d 290, 294 (Cal. Ct. App. 2010). The defendant attorney sought to dismiss the claims against him under California's anti-SLAPP statute. *Id.* at 959, 106 Cal. Rptr. at 295. The plaintiff did not dispute that settlement negotiations were generally protected activity under the right to petition, but argued that the specific settlement negotiations at issue were not constitutionally protected because they were unlawful. *Id.* at 964–65, 106 Cal. Rptr. at 298–99. The California Court of Appeals held, however, that despite these allegations, the defendant was not required to show that "his actions were constitutionally protected as a matter of law." *Id.* Rather, the court held that this issue was for the plaintiff to establish in the second prong of the anti-SLAPP burden-shifting framework. *Id.* (citing ***Fox Searchlight Pictures, Inc. v. Paladino***, 89 Cal. App. 4th 294, 305, 106 Cal. Rptr. 2d 906, 916 (Cal. Ct. App. 2001) (holding that this argument "confuses the threshold question of whether the SLAPP statute applies with the question" under the second prong of the analysis)); *see also **Seltzer***, 182 Cal. App. 4th at 961, 106 Cal. Rptr. 3d at 296 (noting that the California anti-SLAPP statute establishes a two-part test wherein first the defendant demonstrates that the act is applicable and second the plaintiff demonstrates a likelihood of success on the merits).[25] We likewise conclude that the Garners' allegation that Appellants' actions resulted in the filing of frivolous lawsuits is therefore not a bar to application of the first prong of the TPPA.

Finally, we address the trial court's basis for declining to apply its own general rule of TPPA applicability in this case—that such a rule does not apply when the plaintiff alleges "intentional malpractice of [the defendant attorneys], who breached their fiduciary duty to their client for their own personal gain in filing these multiple frivolous lawsuits." In reaching this result, the trial court relied on both Texas and California law.

---

[25] Although we conclude, *infra*, that the proof needed to meet the first prong under the TPPA is different than the California anti-SLAPP statute, the Garners do not dispute that both the California statute and the TPPA contain similar two-prong burden-shifting mechanisms.

- 14 -

In particular, the trial court noted that in determining the applicability of California's anti-SLAPP law against attorneys, the claims had been divided into three classes: "(1) clients' causes of action against attorneys based upon the attorneys' acts on behalf of those clients, (2) clients' causes of action against attorneys based upon statements or conduct solely on behalf of different clients, and (3) non-clients' causes of action against attorneys." *PrediWave Corp.*, 179 Cal. App. 4th at 1227, 102 Cal. Rptr. 3d at 263. Because a claim of the first class is not being brought "primarily to chill the exercise of constitutional rights[,]" and the attorney's alleged misconduct was not an act "in furtherance" of his or her constitutional rights, the California court held that it was unreasonable to apply the anti-SLAPP statute to such a claim. *Id.* at 1227–28, 102 Cal. Rptr. 3d at 263 (first quoting Cal. Civ. Proc. Code § 425.16(a); then quoting Cal. Civ. Proc. Code § 425.16(b)(1)).

Utilizing the language employed by the California court, the trial court explained that the relevant inquiry was "whether [the Garners'] cause of action itself was based on an act in furtherance of [Appellants'] right of petition." But because the Garners alleged that Appellants breached their fiduciary duty to Mr. Cartwright "for their own personal gain," Appellants were not acting in furtherance of "their client's interest." Thus, the trial court concluded that this situation fell into a gap that the Texas court had specifically determined was "outside the scope" of the issue before it: "[w]hether an attorney may be liable to non-clients for conduct engaged in to benefit the lawyer personally, as opposed to the client[.]" *Youngkin*, 546 S.W.3d at 683 n.3.[26] The trial court therefore concluded that it would apply "an exception to the general rule" such that Appellants were not entitled to the protection of the TPPA.

Respectfully, we cannot agree with the trial court's analysis. As an initial matter, we note that neither *PrediWave* nor *Youngkin* involve the type of claim at issue here: a claim by a non-client that an opposing party's attorneys were acting in their own self-interest in filing multiple frivolous lawsuits that caused the non-client financial damage.

---

[26] We further note that the *Youngkin* court made this pronouncement outside the context of the first prong of Texas's anti-SLAPP statute. Rather, after concluding that the TPPA was applicable under the first prong, without any discussion of whether the attorney's actions benefitted him personally, the Texas court proceeded to consider the second prong of the anti-SLAPP analysis, i.e., whether the non-client established sufficient evidence for each essential element of his claims. *Id.* at 681. Under this prong, the court considered the affirmative defense of attorney immunity and explained that "an attorney may be liable to nonclients only for conduct outside the scope of his representation of his client or for conduct foreign to the duties of a lawyer." *Id.* (citation omitted). But the court noted that it was not the wrongfulness of the conduct, but "the *kind* of conduct at issue" that determined liability. *Id.* (citation omitted). This means that an attorney may be liable under Texas law to a non-client when his or her actions "do not qualify as the kind of conduct in which an attorney engages when discharging his duties to his client[,]" such as engaging in a fraudulent business scheme with his client, knowingly assisting a client in evading a judgment, or assaulting opposing counsel, as these "acts are entirely foreign to the duties of an attorney[.]" *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 482 (Tex. 2015) (citations omitted). As noted *infra*, we do not reach the question of whether Appellants have established a defense under the litigation privilege as it exists in Tennessee law.

- 15 -

While the decisions of our sister states may be persuasive in this Court, "[i]t is axiomatic that judicial decisions do not stand for propositions that were neither raised by the parties nor actually addressed by the court." **Staats v. McKinnon**, 206 S.W.3d 532, 550 (Tenn. Ct. App. 2006) (citing **Shousha v. Matthews Drivurself Serv., Inc.**, 210 Tenn. 384, 390, 358 S.W.2d 471, 473 (Tenn. 1962)). As such, these cases offer little guidance as to whether the Appellants met their burden under the first prong of the TPPA in the particular circumstances of this case.

Additionally, to the extent that the trial court appeared to place heavy reliance on its conclusion that Appellants' actions were not in furtherance of a right to petition, that language does not exist in the TPPA.[27] Specifically, the California anti-SLAPP statute states that it applies to "[a] cause of action against a person *arising from* any act of that person *in furtherance* of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue[.]" Cal. Civ. Proc. Code § 425.16(b) (emphasis added). The plain language of the TPPA contains no such requirement.

Moreover, the California act further clarifies that an "act *in furtherance* of a person's right of petition" means, inter alia, nothing more than a "any written or oral statement or writing made before a legislative, executive, or judicial proceeding[.]" Cal. Civ. Proc. Code § 425.16(e) (emphasis added). So then, any written statement made before a court is an act in furtherance of the right to petition under California law. The Trust Lawsuits filed by Mr. Cartwright by and through Appellants clearly meet this definition.

Other California decisions have made clear that it is not necessarily the "in furtherance of" language that limits the application of California's anti-SLAPP statute, but the "arising from" language. Indeed, this language has been central to various courts' conclusions that anti-SLAPP protection did not apply to claims by a client against his or her own former attorney. *See, e.g.*, **Kolar v. Donahue, McIntosh & Hammerton**, 145 Cal. App. 4th 1532, 1539–40, 52 Cal. Rptr. 3d 712, 716 (Cal. Ct. App. 2006); *see also* **Deep Photonics Corp. v. LaChapelle**, 282 Or. App. 533, 546–47, 385 P.3d 1126, 1135 (Or. Ct. App. 2016) (relying on the same language in the Oregon anti-SLAPP statute). Specifically, California courts have held that the "'arising from' requirement is not always easily met[.]" **Kolar**, 145 Cal. App. 4th at 1537, 52 Cal. Rptr. 3d at 716 (citing **Equilon Enters. v. Consumer Cause, Inc.**, 29 Cal. 4th 53, 66, 52 P.3d 685, 693 (Cal. 2002)). For example, "the mere fact an action was filed after protected activity took place does not mean it arose from that activity." **Equilon Enters.**, 29 Cal. 4th at 66, 52 P.3d at 693. Nor is an act "triggered by" or "associated with" a protected act enough to necessarily conclude that it arises from the act. **Kolar**, 145 Cal. App. 4th at 1537, 52 Cal. Rptr. 3d at 716 (citation

---

[27] As discussed more fully in the companion to this case, the TPPA also does not include express language limiting its application to acts that "primarily" chill petitioning activity. **Cartwright Thomason Hendrix**, No. W2022-01627-COA-R3-CV.

omitted). Instead, "the act underlying the plaintiff's cause or the act which forms the basis for the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech." **Equilon Enters.**, 29 Cal. 4th at 66, 52 P.3d at 693 (internal quotation marks and citation omitted).

The language of the TPPA, however, is broader in that it applies to an action that "is based on, relates to, or is in response to that party's exercise of the . . . right to petition[.]" Tenn. Code Ann. § 20-17-105(a). "This Court presumes that the General Assembly used each word in a statute deliberately, and that the use of each word conveys a specific purpose and meaning." **State v. Strode**, 232 S.W.3d 1, 11 (Tenn. 2007) (noting that "we must give effect to every word, phrase, clause, and sentence in constructing a statute" (quoting **State v. Jennings**, 130 S.W.3d 43, 46 (Tenn. 2004))). The Tennessee General Assembly's use of the phrase "relates to" is particularly expansive and equates fairly closely to the "associated with" relationship that the California courts have rejected. *See Relate*, *Webster's New World College Dictionary* (discussed, *supra*). Consequently, whether Appellants were acting in their own best interests or the best interests of Mr. Cartwright in filing the Trust Lawsuits, there can simply be no reasonable reading of the Garners' complaint other than that the instant action both relates to and was filed in response to the Trust Lawsuits. Indeed, the Garners allege that it was those very lawsuits, i.e., Appellants' "pursuit of objectively unreasonable litigation," that caused their injuries.[28]

In sum, we conclude that the trial court's decision to engraft an exception to the general applicability of the TPPA to Appellants' actions in this case is not supported by the plain language of the TPPA. Instead, we conclude that Appellants met their burden to establish the first prong of the TPPA. The trial court's ruling that Appellants' petition be dismissed on this basis is reversed. The burden therefore shifted to the Garners to "establish[] a prima facie case for each essential element of the claim in the legal action." Tenn. Code Ann. § 20-17-105(b). In the alternative, Appellants may "establish[] a valid defense to the claims in the legal action." Tenn. Code Ann. § 20-17-105(c).

Appellants assert that this Court should dismiss the Garners' complaint because they have established several defenses to the action, including the litigation privilege, the inapplicability of the tort of another doctrine, and the expiration of the applicable statute of limitations. The Garners respond that these issues were not properly preserved on appeal or are not ripe for review in this appeal because they were not ruled on by the trial court. We agree on the latter.

In general, this Court only reviews issues that are presented and decided by the trial

---

[28] Furthermore, unlike the companion case in which the plaintiff's involvement with Appellants stems from an attorney-client fiduciary relationship, here the relationship between the Garners and Appellants stems solely from their participation in litigation.

court. *See Dorrier v. Dark*, 537 S.W.2d 888, 890 (Tenn. 1976) ("This is a court of appeals and errors, and we are limited in authority to the adjudication of issues that are presented and decided in the trial courts. . . ."); *In re Estate of Boykin*, 295 S.W.3d 632, 636 (Tenn. Ct. App. 2008). In other words, "when the trial court fails to address an issue in the first instance, this Court will not consider the issue, but will instead remand for the trial court to make a determination in the first instance." *Mid-S. Maint. Inc. v. Paychex Inc.*, No. W2014-02329-COA-R3-CV, 2015 WL 4880855, at *14 (Tenn. Ct. App. Aug. 14, 2015). This rule has been applied even when our review is de novo. *See, e.g.*, *Johnson v. Rutherford Cnty.*, No. M2017-00618-COA-R3-CV, 2018 WL 369774, at *9 (Tenn. Ct. App. Jan. 11, 2018) ("[T]he trial court did not rule on [the] motion for summary judgment; therefore, this Court could not address it in the first instance." (citing *Dorrier*, 537 S.W.2d at 890)).

Here, the trial court denied Appellants' motion to dismiss solely on the basis that Appellants had not met the first prong of the TPPA burden-shifting framework. We therefore conclude that the proper remedy is to remand to the trial court for consideration of these remaining issues.

## V. CONCLUSION

The judgment of the Shelby County Circuit Court is reversed, and this cause is remanded to the trial court for further proceedings as are necessary and consistent with this Opinion. Costs of this appeal are taxed to Appellees, Alice C. Garner, Alan C. Garner, Jackson Capital Partners, L.P., and Jackson Capital Management, LLC, for which execution may issue if necessary.

s/ J. Steven Stafford
J. STEVEN STAFFORD, JUDGE